WILLIAM S. STEVENS v. SOUTHERN RAILWAY COMPANY AND NORTH
CAROLINA RAILROAD COMPANY.

(Filed 25 March, 1953.)

**1. Negligence § 11—**

In order to bar recovery, plaintiff's negligence need not be the sole
proximate cause of his injury, but it is sufficient for this purpose if it be
a contributing cause.

**2. Negligence § 19c—**

When plaintiff's own evidence discloses negligence on his part constitut-
ing the proximate cause, or one of the proximate causes, of his injury,
nonsuit is properly entered.

**3. Railroads § 4—Evidence held to disclose contributory negligence on part
of motorist barring recovery for crossing accident.**

Where plaintiff's own evidence discloses that defendant's tracks could
be seen for a distance of 100 feet before reaching the grade crossing, that
there was nothing to prevent plaintiff from seeing defendant's engine for
at least 90 feet before it reached the crossing, and plaintiff testifies that
the first time he saw the engine it was 8 feet away, and the evidence dis-
closes that plaintiff's truck ran into the side of the engine 30 or 40 feet
back from its front after its front had cleared the crossing, *held* the evi-
dence shows contributory negligence on the part of plaintiff barring recov-
ery as a matter of law, notwithstanding his evidence that there were no
signs warning a motorist that he was approaching defendant's grade
crossing.

**4. Same—**

The fact that a railroad crossing is unmarked by warning signs or signals
and that the motorist is unfamiliar with the surroundings, does not relieve
the motorist of the duty to keep a proper lookout and to see indications
that he is approaching a crossing which are obvious to anyone reasonably
using his ordinary powers of observation.

APPEAL by plaintiff from *Stevens, J.,* at October Term, 1952, of
WAYNE.

Civil action to recover for personal injuries allegedly resulting from
actionable negligence of defendant, Southern Railway Company, lessee
of North Carolina Railroad Company, when its train and an automobile
truck operated by plaintiff collided at a grade crossing of the truck lane
of U. S. Highway 117, which by-passes the city of Goldsboro, and the
two-tracks line of railroad from Goldsboro to Raleigh.

Plaintiff alleges in his complaint, summarily stated, the following: (1) That on 29 December, 1949, an automobile truck transporting goods, wares and merchandise, operated by him and traveling in a southerly direction along truck lane 117 of the U. S. Highway System which by-passes the city of Goldsboro, and train No. 13 of defendant Southern Railway Company proceeding westerly along one of the two tracks of the said line of railroad came into collision at a grade crossing of said truck lane and said line of railroad, to his injury and damage.

(2) That, at said time and place, defendant Southern Railway Company was operating its said train in a careless, heedless and negligent manner (a) in that, knowing the truck lane or road crossed the railroad tracks, it negligently failed to erect and maintain stop signs, or any sign or signal for warning the traveling public of the presence of, and approach to its tracks and trains traveling thereon; (b) and in that it operated one of its engines and trains over said road crossing without ringing any bell, or blowing any horn, or giving any signal of its approach, when it knew, or should have known, in the exercise of ordinary care, that a large number of motor vehicles traveled along said lane or road and over said crossing and tracks; and (c) in that it negligently permitted a dense thicket of bushes and trees to grow in such close proximity to its tracks that a person traveling south and using the lane or road could not see a train approaching from Goldsboro going west, until he was upon the railroad track,—as the direct and proximate result of which plaintiff sustained serious and permanent injuries to his great damage.

Defendants, answering, deny in material aspect the allegations of the complaint. They admit, however, that they maintain two tracks which cross the by-pass highway, and extend westwardly from the city of Goldsboro, and that on 29 December, 1949, it was operating its passenger train No. 13 over and along said tracks in a westerly direction, and that just prior to the collision thereinafter referred to, the automobile truck, property of Frederick V. Perry, was proceeding southwardly along the by-pass highway, and was being operated by either William S. Stevens or Ed S. Abell, Jr.; but in this connection defendants expressly deny that defendant's engine or train ran into the motor vehicle involved in this action.

Defendants further admit that there were no gates, lights, barricades or bells maintained at said crossing by the defendants.

And for a first further answer and defense, and in bar of plaintiff's alleged right to recover against them, defendants aver in detail that the track of defendants was clear and visible to a traveler on said by-pass highway from various points for various distances eastward from the crossing; that the automobile truck driven by plaintiff, or in which he was riding, was approaching said crossing from the north, and the driver,

without looking or listening drove it into the engine of defendants when it had passed over approximately 50 feet of said crossing; that if it should be ascertained that William S. Stevens, the plaintiff, was the driver of said automobile truck, which carelessly and negligently ran into the side of the engine, defendants aver that in approaching and entering upon said crossing, the driver (a) drove the automobile truck in a careless, negligent, reckless, and inattentive manner without exercising any care to listen for signals or to look for the approach of said train; (b) failed to heed signals and warnings of the approach of said train and entered upon said crossing when he knew, or, by the exercise of due care, should have known of the approach of said train; and (c) drove said automobile truck for a considerable distance, while approaching said crossing, through a zone of unobstructed vision wherein he could, by the exercise of reasonable care, have discovered the approach of said train before driving into the side of defendant's engine as it was passing over said crossing; and defendants "set up and plead the aforesaid contributory negligence on the part of William S. Stevens (if it should be determined that he was driving said vehicle) in bar of his right to recover in this action."

Upon trial in Superior Court, plaintiff offered evidence tending to show these facts: A collision between an automobile truck, belonging to Frederick V. Perry and operated by plaintiff, and an engine and passenger train of defendant Southern Railway Company occurred about 4:30 o'clock on afternoon of 29 December, 1949, at a grade crossing on a truck lane or dirt road of the U. S. Highway System, by-passing the city of Goldsboro, and plaintiff sustained personal injury for which he seeks compensation.

The bed of the road had been put there for the purpose of a route around the city of Goldsboro, and had been leveled and prepared for paving, and opened to the public "to settle and pack down," and had been so opened and in use by vehicular traffic for two or three months.

The by-pass road ran in general north-south direction, and the railroad in general east-west direction. The truck was traveling from north to south, and the train was moving from east to west on the north track of the double track railroad. The engine was from 15 to 20 feet high and 85 to 90 feet long, with tender and cars attached. The road at the intersection was about 40 feet wide.

Plaintiff was driving on his right side of the road. And the truck collided with the side of the engine. The point of impact on the engine was just beneath the engineer's seat about 30 feet, as estimated by plaintiff, or 40 feet, in opinion of an officer, from the front of the engine. And, at the time of the impact, as plaintiff testified, "I would say the front of the engine had passed the western edge of the intersection, say 20 feet."

But when he first saw it "the front of the engine was along the center." And, in this connection, on cross-examination, these pertinent questions were asked of, and answered by plaintiff as shown:

"Q. When the front of this engine reached the center of this intersection going west, it then traveled a distance of 40 feet before it was struck by your truck, wasn't it? A. Yes, sir. Q. So that when the front of this engine was in the intersection and the engine itself extended back westward (manifestly, should be eastward) and a car attached to it, wasn't it? A. Yes, sir. Q. You were then 40 feet north of that intersection? A. Yes, sir."

Plaintiff described the collision and attendant circumstances in this manner, quoting: "I was taking the short cut to avoid the town of Goldsboro, and was driving, not exceeding 25 miles an hour. I was watching the road, wasn't looking from one side to the other, and was carrying on a conversation with a friend, Ed Abel, who was riding with me. The first thing I knew, within eight feet of me, I saw this locomotive. On a dirt road, as heavy as a big panel truck was, it would have been impossible to have stopped. I put on all the brakes I could, and swerved it as hard as I possibly could to the right . . . trying to dodge or keep from getting hit right on the track; then I heard a great big noise, a growling hum, and the next thing I remember I came to in the hospital in Goldsboro . . . As I approached the point . . . there was no stop sign to show that there was a railroad; there was no gong . . . no watchman, there was nothing to warn me . . . The railroad was at grade, that is level with the highway . . . It was a fair day, but the road was just as dusty as it could be because of traffic. The railroad tee-irons were bound to be covered with dust, and they were. I didn't see the tee-irons . . . The tops of the tee-irons were on a level with the dirt road. I had not been along the truck lane going southwardly over the point where I saw the engine until this day. I did not know that the railroad crosses the highway, the truck lane, at that point or anywhere along there. As I approached the point across the truck lane . . . the train did not by any whistle give any warning of its approach . . . there was no bell rung, there were no lights, blinker lights, or any kind of lights that warned the public of the presence of the railroad; there was no watchman there . . ."

Then on cross-examination plaintiff detailed his familiarity with the neighborhood around and in Goldsboro in the vicinity of the intersection. He also testified in pertinent part: ". . . In my opinion the train was not going over 25 miles an hour . . . The road from a point approximately 200 feet north of the intersection is nearly straight, but there are plenty of obstructions . . . trees and bushes. The trees and bushes . . . are possibly 90 feet northeast of the intersection," and "I would say 15 feet" north of the northern rail of the railroad track.

Then plaintiff testified in substance that when within 200 feet north of the intersection there was nothing to obstruct view of the intersection, or of an engine the front of which had reached the eastern edge of the intersection.

Then plaintiff, referring to a photograph on which the point "x" represents location of trees northeast of the intersection above referred to, and the point "B" a point on the railroad track east of and 120 feet from the intersection, testified that drawing a straight line between those two points "all that I can see there" that would obstruct one's view is a little tree about 3 or 4 inches in diameter.

And there is testimony that the area northeast of the intersection is depressed three or four feet, and that if a man driving on the dirt road in southerly direction reached a point 90 feet from the intersection and looking to his left, there is nothing to obstruct his view or to keep him from seeing an engine or train that is within the area from point "B" to the crossing except a little rubbish there,—two or three feet high. And there is evidence of greater visibility when nearer the track.

Plaintiff also testified that in approaching the intersection from the north the tee-irons could not be seen, and he also testified that they could be seen 40 to 50 feet away. Ed Abell testified: "You can see the railroad for some distance back before you get to the first iron . . ." And, again, "If a person looks on both sides of the highway he could see the railroad for some distance back . . . I would say he could see it approximately 100 feet, I don't know. I have observed this picture, and if you look on both sides . . . you could see it (referring to the track) for a distance of 100 feet." There is other testimony to like effect.

There is also evidence that there were eight or ten coal cars on the south track, east of, and within seven, eight or ten feet of the eastern intersection of the highway, and railroad; that these cars were 8, 10 or 15 feet high and 35 or 40 feet long, extending east four or five hundred feet from the crossing; and that "any one going south and within 150 feet of the intersection could clearly see them."

Motion of defendants, entered at the close of plaintiff's evidence, for judgment as of nonsuit was allowed. And from judgment in accordance therewith plaintiff appeals to Supreme Court and assigns error.

*J. Faison Thomson & Son and N. W. Outlaw for plaintiff, appellant.*

*Taylor & Allen, Lindsay C. Warren, Jr., and W. T. Joyner for defendant Southern Railway Company, appellee.*

WINBORNE, J. The pivotal question before this Court challenges the ruling of the trial court in granting motion for judgment as of nonsuit at the close of plaintiff's evidence. If it be conceded that there is suffi-

cient evidence to take the case to the jury on the issue as to negligence of defendant, in any of the respects alleged, the evidence indicates clearly and inescapably that plaintiff was negligent and that his negligence was at least a contributing cause of any injury and damage he may have sustained when the automotive truck operated by him ran into the side of defendant's train as it passed over the intersection of the road on which plaintiff was proceeding and the railroad tracks of defendant.

The plaintiff thus proves himself out of court. His negligence need not be the sole proximate cause of the injury. It is enough if it contributes to the injury. See *Bailey v. R. R.,* 223 N.C. 244, 25 S.E. 2d 833, and cases cited.

In this connection, decisions of this Court uniformly hold that "a railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when the conditions are such that a diligent use of the senses would have avoided an injury, a failure to use them constitutes contributory negligence and will be so declared by this Court," as stated by *Brown, J.,* in *Coleman v. R. R.,* 153 N.C. 322, 69 S.E. 251. See also *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137.

And in the *Godwin case, supra, Stacy, C. J.,* wrote: "We have said that a traveler has the right to expect timely warning . . . but the failure to give such warning would not justify the traveler in relying upon such failure or in assuming that no train was approaching. It is still his duty to keep a proper lookout . . ." See cases cited.

But the plaintiff in the case in hand says and contends that he did not know there was a railroad crossing at the place of collision in question. In this connection, we find in Blashfield's Cyc. of Automobile Law and Practice, Vol. 3, p. 214, Sec. 1814, this clear statement of the applicable principle of law in such cases: "The mere fact, however, that the driver is unfamiliar with the locality generally or does not know by recollection, as distinguished from observation, the character of the neighborhood, does not authorize him to drive heedlessly in disregard of the possible presence of crossings and then claim the benefit of the protection given those who are ignorant of the presence of a crossing. If, as he proceeds, his senses furnish him with sufficient information to apprise him of the existence of a crossing, he, although theretofore unconscious of its existence, is under the same duties in approaching it as any traveler who is independently acquainted with its existence.

"Moreover, he is not relieved from the responsibility of exercising his senses and avoiding a collision with a train thereon by reason of his ignorance of the train's existence, if its presence is made to appear by such indications and signs of there being a crossing near at hand as to make it obvious to anyone reasonably using his ordinary powers of observation.

It is no excuse that his attention is so occupied in the operation of his automobile as to withdraw his attention from the unmistakable signs of a railroad crossing open and apparent to any driver in his situation who is watching the road ahead."

Among the cases cited in support of the above text are: The case of *Gelbin v. N. Y., N. H., & H. R. Co.*, 62 Fed. 2d 500, in which *Manton, J.*, of Circuit Court of Appeals, Second Circuit, declared: "If the decedent was advised of the existence of the crossing as he proceeded, the degree of care imposed upon him was that of a wayfarer who did know of the crossing."

And the case of *Piscitello v. N. Y., N. H. & H. R. Co.*, 116 Conn. 638, 166 A. 61, which is strikingly similar in factual situation to case in hand. There *Avery, J.*, speaking for the Supreme Court of Errors of Connecticut, after relating the facts, had this to say: "A traveler on a highway, approaching a railroad crossing, is not relieved from the responsibility of exercising his senses and avoiding collision with a train thereon by reason of his ignorance of the existence of such a crossing if the presence of the railroad is obvious to anyone reasonably using ordinary powers of observation," citing several cases from Connecticut and other states.

These principles are applicable to facts of case in hand. When so applied it is patent that as plaintiff proceeded along the by-pass or truck lane, that is, the highway, he was required to see and hear what a reasonably prudent person would see and hear under the circumstances.

His evidence discloses that: It was a fair day. The highway from a point approximately 200 feet north of the intersection was nearly straight. Within that distance there was nothing to obstruct the view of the intersection, or of an engine the front of which had reached the eastern edge of the intersection. The tee-irons in the track in the intersection could be seen 40 to 50 feet away. On both sides of the highway the railroad could be seen for a distance of 100 feet. There were coal cars on the south track east of, and within 7 to 10 feet of the eastern side of the intersection. From a point 90 feet north of the intersection there was nothing to obstruct plaintiff's view or to keep him from seeing an engine or train from the east, within 120 feet of the intersection. From points nearer the intersection visibility to the east was greater. When plaintiff first saw the engine, the front of it was in the center of the intersection. It was 8 feet away, and his truck ran into the engine after the front of it was 20 feet west of the intersection. And the point of impact was 30 to 40 feet back of the front of engine. Under these circumstances portrayed by plaintiff's evidence, it is patent that he was not exercising due care under the circumstances. And it is so held.

Authorities cited by plaintiff have been given due consideration, and are not in conflict with this ruling.

Other assignments of error have been given due consideration, and in them prejudicial error is not made to appear.

Affirmed.