STATE HIGHWAY COMMISSION v.
CLINCHFIELD RAILROAD COMPANY.

(Filed 9 October 1963.)

**Highways § 2—**

    G.S. 136-20 relates only to the construction of underpasses, overpasses, or the installation and maintenance of gates, alarm signals or other

safety devises at railroad grade crossings, and a proceeding under the statute to require defendant railroad company to widen solely at its own expense its crossing sequent to the widening of the intersecting highway, should be dismissed.

APPEAL by defendant from *Patton, J.,* April 1963 Session of RUTHERFORD.

The State Highway Commission (Commission) initiated this proceeding in the manner stated below to compel Clinchfield Railroad Company (Clinchfield) to widen at its own expense the grade crossing in Rutherford County where Clinchfield's track and Secondary Road 2105 intersect.

The record consists of (1) the minutes of meetings of the Commission held December 7, 1961, February 1, 1962, March 15, 1962, and April 13, 1962; (2) an order dated April 26, 1962 issued to Clinchfield by the Commission's Chairman as directed by a resolution or ordinance adopted by the Commission on April 13, 1962; (3) Clinchfield's exceptions and notice of appeal to the superior court; (4) Judge Patton's judgment; and (5) Clinchfield's exceptions, appeal entries and assignments of error.

The Commission, purporting to act under authority of G.S. 136-20 and in accordance with the procedure prescribed therein, initiated this proceeding by a resolution adopted at its December 7, 1961, meeting. This resolution recited, *inter alia,* that Secondary Road 2105 had been widened in 1959 from a pavement width of 16 feet to 18 feet; and that the said crossing, in the opinion of the Commission's Chairman, was dangerous to the traveling public and unreasonably interfered with and impeded traffic on said road. In said resolution, the Commission concurred in said opinion of its Chairman and ordered Clinchfield to appear before it to show cause, if any, why it should not be required "to alter such crossing in such way as to remove such dangerous condition and to make such changes and improvements thereat as will safeguard and secure the safety and convenience of the traveling public thereafter."

The minutes of the February 1, 1962, meeting show the Commission, at the request of Clinchfield's counsel, granted Clinchfield permission to appear at the next meeting of the Commission in lieu of the date "set forth in the order."

The minutes of the March 15, 1962, meeting show counsel for Clinchfield, appearing before the Commission, *contended:* The crossing was an existing crossing, not a new crossing. The Commission intended to take additional right of way for said widening without payment of any form of compensation to Clinchfield. The only benefits

from said widening would accrue to vehicular traffic. Clinchfield would derive no benefit therefrom. The *maintenance* of the crossing, plus the giving of the right of way for the improvements, was sufficient to discharge Clinchfield's obligation. After said statement of Clinchfield's contentions, the Commission adopted a motion that "action on the matter be deferred," and that the matter be "considered for a month and taken up again at the next meeting of the Commission."

The minutes of the April 13, 1962, meeting show the Commission then "RESOLVED AND ORDAINED" that Clinchfield *construct* the proper and adequate crossing at its own expense and bear the cost of future maintenance thereof; that the crossing be constructed by Clinchfield in accordance with the pattern, design and specifications approved by the Commission; that the crossing constructed by Clinchfield "extend a distance of 5 feet each side of the paved or traveled portion of said roads and . . . be between the tracks and between the ends of the ties"; and that Clinchfield proceed with the construction of said crossing within 30 days after receipt of notice from the Commission's Chairman. The Commission's Chairman issued an order dated April 26, 1962, directing Clinchfield to proceed in compliance with said resolution or ordinance of the Commission.

(Note: The Commission's resolutions and the Chairman's order refer also to grade crossings in McDowell County. However, the hearing and judgment below and this appeal relate solely to the Rutherford County crossing.)

Clinchfield filed exceptions to said order of April 26, 1962, and appealed therefrom on the ground, *inter alia*, the Commission had no statutory or constitutional authority to adopt said resolution or ordinance of April 13, 1962.

The court, based upon "an examination of the record, pleadings and arguments and contentions of the parties," entered judgment which, after sundry recitals, concluded as follows:

"That the Court finds as a fact that the crossing located 200 feet west of Milepost No. 1 on spur tracks going into Duke Power Company in Rutherford County was dangerous to the public safety and unreasonably interfered with traffic on said highway;

"That the Order of the Commission of April 26, 1962, requiring the Railroad to build and construct proper and adequate crossing to extend five feet each side of the paved or traveled portion of said road and to be constructed between the tracks and between the ends of the ties is reasonable and necessary for the protection of the traveling public;

"That the Court finds as a fact that the work required and apportionment of the cost to the Railroad as set forth in the Order is fair and reasonable to the Clinchfield Railroad Company.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

"That the Order of the Commission issued on April 26, 1962, is constitutional and was issued pursuant to the statutory authority vested in the State Highway Commission by Chapter 136 of the General Statutes; that said order was necessary and reasonable for the protection of the traveling public; that the work required and apportionment of the cost to the Railroad as set out fully in the said Order is fair and reasonable to the Railroad Company.

"IT IS, THEREFORE, ORDERED that the Railroad Company perform the work and bear the expense thereof as set out in the Order of the Commission, dated April 26, 1962, and that said Order is hereby in all respects confirmed.

"That Clinchfield Railroad Company herein pay the costs of this action."

Clinchfield filed exceptions to designated findings of fact and to designated legal conclusions, excepted to the judgment and appealed therefrom.

*Attorney General Bruton, Assistant Attorney General Lewis and Trial Attornay Daniel for appellee.*

*A. K. McIntyre and E. P. Dameron for appellant.*

BOBBITT, J. While the preamble of the resolution or ordinance adopted April 13, 1962, recites, *inter alia*, that "the Commission has determined and finds that the conditions existing at said grade crossings are dangerous to the safety and convenience of the traveling public and should be eliminated," there are no findings of fact or recitals as to actual conditions with reference to said crossing. Nor does it appear that evidence as to such conditions was offered at any of said meetings of the Commission.

The hearing in the superior court was on a record consisting of the minutes of said meetings of the Commission and of the Chairman's order of April 26, 1962. There were no "pleadings."

Was Secondary Road 2105 in existence when Clinchfield constructed its track? Was the grade crossing, prior to the widening of the paved portion of Secondary Road 2105 from 16 feet to 18 feet, in such condition it unduly interrupted or impeded the free and safe movement of traffic at the crossing? Did Clinchfield benefit by such widening?

Why the requirement that Clinchfield construct (extend) the crossing *five* feet each side of the paved or traveled portion of the road? Was Clinchfield the owner of the fee or of an easement in the land comprising said grade crossing? Answers to these and other factual questions may be of significance in determining whether Clinchfield is obligated at its own expense to construct the extension ordered by the Commission's resolution or ordinance of April 13, 1962.

We do not consider Clinchfield's contentions that the Commission did not comply with the procedural requirements of G.S. 136-20 or with constitutional requirements of due process. Decision is based on the ground G.S. 136-20 has no application to the factual situation disclosed by the record before us.

G.S. 136-20(a) provides, *inter alia*, if a grade crossing, in the opinion of the Commission's Chairman, "is dangerous to the traveling public, or unreasonably interferes with or impedes traffic" on a State highway, the Commission shall notify the railroad company to appear before the Commission and show cause why it "shall not be required to alter such crossing in such way as to remove such dangerous condition and to make such changes and improvements thereat as will safeguard and secure the safety and convenience of the traveling public thereafter."

G.S. 136-20(b) provides, in part, after service of notice as prescribed, "the Commission shall hear said matter and shall determine whether such crossing is dangerous to public safety, or unreasonably interferes with traffic thereon. If it shall determine that said crossing is, or upon the completion of such highway will be, dangerous to public safety and its elimination or safeguarding is necessary for the proper protection of the traffic on said State highway, the Commission shall thereupon order the construction of an adequate underpass or overpass at said crossing or it may in its discretion order said railroad company to install and maintain gates, alarm signals or other approved safety devices if and when in the opinion of said Commission upon the hearing as aforesaid the public safety and convenience will be secured thereby. And said order shall specify that the cost of construction of such underpass or overpass or the installation of such safety device shall be allocated between the railroad company and the Commission in the same ratio as the net benefits received by such railroad company from the project bear to the net benefits accruing to the public using the highway, and in no case shall the net benefit to any railroad company or companies be deemed to be more than ten per cent (10%) of the total benefits resulting from the project."

Extensive subsequent provisions of G.S. 136-20 relate directly and exclusively to orders, plans, work and apportionment of cost in connection with construction of underpasses or overpasses or the installation and maintenance of gates, alarm signals or other safety devices at such grade crossing.

Careful consideration impels the conclusion G.S. 136-20 applies only to a factual situation for which provision is made, namely, the construction of an underpass or overpass or the installation and maintenance of gates, alarm signals or other safety devices.

No opinion is expressed or intimated as to whether, upon facts established in a properly constituted action, Clinchfield is obligated to make the improvements contemplated by the Commission's resolution or ordinance of April 13, 1962, wholly or partly at its own expense.

Being of the opinion G.S. 136-20 does not apply to the factual situation disclosed by the record before us, the judgment of the court below is reversed, and the proceeding is remanded with instructions that the court below enter judgment dismissing the purported proceeding (to the extent it relates to said Rutherford County crossing) without prejudice to the Commission's right to take such further action as it may deem appropriate.

Reversed and remanded.