LARUE B. COX, Administrator of the Estate of JANET GAIL COX, Deceased, v. LLOYD D. GALLAMORE, JR. and NORFOLK SOUTHERN RAILWAY COMPANY.

(Filed 16 June, 1966.)

**1. Trial § 21—**

Upon motion to nonsuit, plaintiff's evidence must be taken as true and interpreted in the light most favorable to him, giving him the benefit of all inferences favorable to him reasonably deducible therefrom, and resolving in his favor all contradictions or inconsistencies, if any, in his evidence.

**2. Negligence § 26—**

Nonsuit for contributory negligence is proper only when plaintiff's own evidence inescapably establishes this defense.

**3. Railroads § 6—**

A passenger in an automobile cannot be held contributorily negligent as a matter of law in failing to warn the driver of the approach of a train at a railroad grade crossing when the approach of the train is obscured by buildings and obstructions, the track across the highway is not visible until immediately upon it, and the paint on the railroad crossing sign has been allowed to fade so that its warning is not easily distinguishable.

**4. Same—**

The failure of the State Highway Commission to require the installation of gates, alarm signal, or other safety devices at a grade crossing does not relieve the railroad from its common law duty to give users of the highway adequate warning of the existence of the grade crossing. G.S. 136-20.

**5. Same—**

While a railroad crossing is, in itself, a warning of danger to a driver who knows of it or who, by keeping a reasonable lookout in his direction of travel, should discover its existence in time to stop his vehicle before entering the path of an approaching train, such driver is not required to assume that he will come upon an unknown, unmarked railroad crossing which is not discoverable by a reasonable lookout.

**6. Same—**

Even though a railroad crossing has signs posted which are adequate to give a traveler on the highway notice of the presence of the railroad cross-

ing, it is also the duty of the railroad to give timely warning of the approach of its train to the crossing by the blowing of the whistle or horn, by ringing the bell, or by some other device reasonably calculated to attract the attention of those approaching the crossing upon the highway.

**7. Same—**

The duty of the engineer of a train approaching an obstructed highway crossing to give reasonable and timely warning of the approach of the train to the crossing is the same whether the obstructions are erected by the railroad or by some other person.

**8. Same—**

The driver of an automobile who knows or, by the exercise of a reasonable lookout in the direction of travel, should know that he is approaching a railroad crossing, is not relieved of his duty to look before entering upon the crossing merely because he has heard no signal of an approaching train, and he is under duty to his passenger to reduce his speed so that he can stop the vehicle, if necessary, in order to avoid a collision with an approaching train, the train having the right of way at the crossing.

**9. Negligence § 8—**

Negligence of one party cannot insulate the negligence of another unless the negligence of such other is a superseding cause which alone results in the injury; this it cannot do if the primary negligence continues up to the moment of impact.

**10. Railroads § 6— Evidence held sufficient to be submitted to the jury on issue of concurring negligence of driver and railroad in causing death of passenger in crossing accident.**

Evidence tending to show that a locomotive approached a crossing without giving signal by whistle or otherwise, that the crossing was obstructed and that the train did not come into view of the driver of the car in which plaintiff's intestate was riding until the car was some 175 feet from the crossing, leaving it a question of fact whether the driver, by the use of reasonable care under the circumstances, could have brought his car to a stop before striking the train or whether, by maintaining a reasonable lookout in his direction of travel. he should have discovered the existence of the crossing before the train, itself, came into view, *held* sufficient to be submitted to the jury on the question of concurring negligence of the railroad company and the driver in an action for wrongful death of a passenger in the automobile.

Moore, J., not sitting.

Appeal by plaintiff from *Morris, J.,* 6 December 1965 Regular Civil Session of Currituck.

This is an action for the wrongful death of Janet Gail Cox, age 15, as the result of a collision between a train of the Norfolk Southern Railway Company and an automobile driven by the defendant Gallamore, in which automobile she was riding as a passenger. The answer of each defendant admits that the collision occurred on 28 August 1960 at a grade crossing of the Railway Com-

pany's track by a paved public highway in Currituck County, that the automobile was driven by Gallamore, and that Janet Gail Cox died as a result of injuries sustained by her in the collision.

The complaint alleges that the Railroad was negligent in that it failed to erect and maintain adequate signs or signals showing the presence of the crossing, it operated its trains at an excessive speed, failed to keep a lookout for automobiles approaching the crossing, failed to reduce the speed of the train, and failed to give a signal of the train's approach to the crossing by bell, whistle or horn. The complaint alleges that Gallamore was negligent in that he drove the automobile at an excessive speed, failed to decrease his speed, failed to keep a lookout for approaching trains and failed to stop the automobile short of the track so as to allow the train to pass. The complaint alleges that the negligence of the two defendants concurred and that each was a proximate cause of the collision and of the death of the girl.

The answer of each defendant denies negligence by the answering defendant, admits negligence of the other defendant, as alleged in the complaint, and alleges that such negligence of the other defendant was the sole proximate cause of the collision. Each defendant also pleads contributory negligence of the deceased in not warning Gallamore of the danger.

At the close of the evidence offered by the plaintiff, a motion for judgment of nonsuit as to each defendant was granted. From the judgment of nonsuit so entered the plaintiff appeals.

The plaintiff offered evidence which may be summarized as follows:

The deceased, her cousin, Carol Beck, and four male companions were out for a Sunday afternoon ride. This began in Norfolk where all of them resided with the exception of Gallamore, who was also in Norfolk at that time and joined the party there. At the time of the collision, Gallamore was driving the automobile. The deceased and one of the other young men were sitting on the front seat. The other three men in the party had been drinking a substantial quantity of beer, but neither Gallamore nor either of the girls had had anything to drink.

The members of the party who testified were not familiar with the highway upon which they were driving and there is no evidence to indicate that any member of the party had been on this road before or knew of the existence of the railroad crossing. They were traveling west on Highway No. 1148, a paved road with one lane for traffic moving in each direction. The highway crossed the railroad track at grade, rising slightly as it approached the track. The track was not elevated above the surface of the highway approaches

to it or the surrounding terrain. Thus it was not visible as it actually crossed the road until one came practically upon it. One looking for it to the north could see the track when about 400 feet east of the crossing, provided his view was not obstructed by trucks in a parking area adjoining the north side of the road. There were trucks parked there when the collision occurred. As Gallamore approached the crossing there was no sign warning of its existence except that 12 feet from the rails there was the customary railroad crossing sign consisting of two crossed boards, each from three to four feet long and approximately four inches wide, placed upon a dark-colored post, and rising some 15 feet above the ground. The crossed boards had once been painted white but practically all of the paint had worn off so that the condition of the sign was "weather beaten" and "very faded," about like an unpainted house. Other unpainted poles carrying utility wires were nearby. Further west was a wooded area which provided a dark background for the crossing sign.

The train came from the north, the right of the occupants of the automobile. As a driver approached the crossing, thirteen buildings, tanks or other structures, plus several trucks standing in a parking area beside a store, blocked his view of a train coming from the north, although there were, at certain places along the road, open spaces between the buildings through which one could, if looking in that direction at the right instant, have seen to and beyond the line of the track. The track itself would not have been visible.

When the automobile was approximately 175 feet from the crossing, the locomotive came into the sight of the occupants of the car, emerging from behind a long building formerly used as a freight station and, at the time of this occurrence, used as a shed for storing potatoes. At that time the train was approximately 125 feet from the crossing. Gallamore, the driver of the automobile, immediately applied his brakes and cut to his left to bring it to a stop. The car skidded into the side of the locomotive near the front of it and the deceased sustained injuries from which she died, apparently being instantly killed. The brakes of the car were in good condition. There was loose gravel on the surface of the highway.

Gallamore had taken over the driving of the car approximately one mile before reaching the crossing. He was driving 40 miles an hour. The windows of the automobile were all down and the radio was not turned on. The occupants were not engaged in any boisterous conduct. Each of the two who testified said that he did not hear any whistle, bell or other signal indicating the approach of the train to the crossing, that his hearing was excellent and there was nothing to prevent him from hearing such a signal. Neither of them

saw the crossing sign until after he saw the train. All the occupants of the automobile observed the train at the same time and cried out.

A whistle post stood beside the railroad track 1,000 feet north of the crossing.

*J. W. Clontz and Wilton F. Walker for plaintiff appellant.*
*J. Kenyon Wilson, Jr. and John H. Hall for defendant Railroad, appellee.*
*Leroy, Wells & Shaw for defendant Gallamore, appellee.*

LAKE, J.  In passing upon the motion for judgment of nonsuit, the evidence of the plaintiff must be taken as true and must be interpreted in the light most favorable to the plaintiff. All reasonable inferences favorable to him must be drawn therefrom. Contradictions or inconsistencies, if any, in his evidence must be resolved in his favor.

The judgment of nonsuit could be affirmed on the ground of contributory negligence by the plaintiff's intestate only if his own evidence, so considered, leads inescapably to the conclusion that she was negligent and thereby contributed to her own injuries. There being no such evidence in the record before us, the judgment cannot be sustained on that ground.

G.S. 136-20, which empowers the State Highway Commission, under certain circumstances, to require a railroad company to install gates, alarm signals or other safety devices at a crossing, does not relieve the railroad from its common law duty to give users of a highway adequate warning of the existence of a grade crossing at which the Commission has not required such devices to be installed. *Highway Commission v. R. R.*, 260 N.C. 274, 132 S.E. 2d 595.

A railroad crossing is, in itself, a warning of danger to a driver who knows of it or who, by keeping a reasonable lookout as he drives along a highway, could discover its existence in time to stop his vehicle before entering the path of a train proceeding over the crossing. *Ramey v. R. R.*, 262 N.C. 230, 136 S.E. 2d 638; *Stevens v. R. R.*, 237 N.C. 412, 75 S.E. 2d 232. On the other hand, one driving upon a highway is not required to assume that he will come upon an unknown, unmarked railroad crossing at grade level which is not discoverable by keeping a reasonable lookout in the direction of his travel. It is the duty of the railroad to give to users of the highway warning, appropriate to the location and circumstances, that a railroad crossing lies ahead. *Davidson v. R. R.*, 170 N.C. 281, 87 S.E. 35; *Stephenson v. Grand Trunk Western R. Co.*, 110 F. (2d) 401, 132 A.L.R. 455; 75 C.J.S., Railroads, § 768b; 44 Am. Jur., Rail-

roads, § 558; Annot., 40 A.L.R. 1309. In 44 Am. Jur., Railroads, § 528, it is said:

> "A traveler's ignorance of the existence of a railroad cross-ing does not impose any additional duty on a railroad company in the operation of its trains, but the company may, by its omission of some duties, subject itself to a liability for injury to one ignorant of a crossing, where it would not be liable if he knew thereof. One of these is the duty to give appropriate warning to persons using the highway of the presence of rail-road crossings. The manner in which this duty shall be dis-charged varies according to the circumstances and surround-ings, and ordinarily it is a question for the jury whether the duty in a particular case has been sufficiently performed. This is usually done by means of sign boards at or near the cross-ing indicating the presence of the crossing, and these are fre-quently required by statute."

Even though the railroad has posted signs which are adequate to give a traveler upon the highway notice of the presence of a railroad crossing, it is also the duty of the railroad to give timely warning of the approach of its train to the crossing by the blowing of the whistle or horn, by ringing the bell or by some other device reasonably cal-culated to attract the attention of those approaching the crossing upon the highway. *Johnson v. R. R.*, 255 N.C. 386, 121 S.E. 2d 580; *Irby v. R. R.*, 246 N.C. 384, 98 S.E. 2d 349; *Caldwell v. R. R.*, 218 N.C. 63, 10 S.E. 2d 680; *Moseley v. R. R.*, 197 N.C. 628, 150 S.E. 184; *Hill v. R. R.*, 195 N.C. 605, 143 S.E. 129; *Blum v. R. R.*, 187 N.C. 640, 122 S.E. 562; *Johnson v. R. R.*, 163 N.C. 431, 79 S.E. 690; *Hinkle v. R. R.*, 109 N.C. 472, 13 S.E. 884.

In the *Hinkle* case, Avery, J., speaking for the Court, said:

> "In the absence of statutes regulating the time and manner of giving signals, the failure of an engineer in charge of a loco-motive to ring the bell or sound the whistle on approaching the crossing of a public highway * * * is evidence of negligence to be submitted to the jury. [Citations omitted.]
>
> "It is negligence *per se* * * * to omit to give in reason-able time some signal from a train moving * * * when it is hidden from the view of travelers, who may be approaching and in danger of coming in collision with it, by the cars of the company left standing on its track, or by an embankment, a cut or a sharp curve in its line, or by any other obstruction al-lowed to be placed or placed in any way by the company. [Ci-tations omitted.]

"Where a railroad company has erected a whistle-post at a proper distance from a crossing in order to notify engineers when to give timely warning of the approach of a train to.persons using the intersecting highway, and the purpose of the company is known to the public so that persons generally are led. to act on the supposition that a signal will be given at the post, it is negligence on the part of the company. if the engineer fail to sound the whistle at the point so indicated in passing with a freight or passenger train in his charge."

Where the railroad knows, or should know, that there are not adequate signs warning travelers upon the highway that they are approaching a crossing and knows, or should know, that the view of an approaching train from the highway approach to crossing is obstructed, the duty to give reasonable and timely warning of the approach of its train to the crossing is the same whether the building which obstructs the traveler's view was erected by the railroad or by some other person. The failure of the railroad to give reasonable and timely warning of the approach of its train to such a crossing is negligence.

On the other hand, the driver of an automobile, who knows, or, by the exercise of a reasonable lookout in the direction of his travel, should know, that he is approaching a railroad crossing, may not proceed to and upon it without looking in both directions along the track merely because he has heard no signal of an approaching train. The driver, who knows, or should know, that he is approaching a crossing at which his view of the track is obstructed, owes to the passengers in his vehicle the duty to reduce his speed so that he can stop the vehicle, if necessary, in order to avoid a collision with an approaching train. *Johnson v. R. R.,* 255 N.C. 386, 121 S.E. 2d 580; *Henderson v. Powell,* 221 N.C. 239, 19 S.E. 2d 876. The train has the right of way at the crossing and it is the duty of the driver of the automobile who sees, or should see, the approaching train in time to stop, to do so. *Coltrain v. R. R.,* 216 N.C. 263, 4 S.E. 2d 853; *Johnson v. R. R.,* 163 N.C. 431, 79 S.E. 690.

In *Henderson v. Powell, supra,* suit was brought against a receiver operating a railroad for the wrongful death of a passenger in an automobile struck by a train at a crossing. It was held that the negligence of the driver of the automobile in driving onto the crossing was not an unforeseeable, intervening cause which insulated the negligent failure of the railroad to give a signal of the approach of the train. Speaking for the Court, Seawell, J., said:

"No negligence is 'insulated' so long as it plays a substantial and proximate part in the injury. Restatement of the Law,

Torts, sec. 447. 'In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury.' Shearman & Redfield on Negligence (1941) Vol. 1, p. 101, sec. 38 * * *

"The negligence imputed to the defendants [the railroad] by the evidence is the operation of the train at an unlawful rate of speed, over an unprotected street crossing in a populous town, without signals or warning of its approach. Assuming this to be true, it was active negligence down to the moment of impact on the McCrimmon car, and proximately effective at that time, at least inferably so. Similarly, the McCrimmon car was in movement disregarding precautions and prudent operation when struck. The omitted acts were all relative to these movements. The default was concurrent."

The plaintiff offered testimony from which the jury could find that the Railroad gave no signal, by whistle or otherwise, that the train was approaching the crossing. Whether this evidence is true and whether, if true, it is sufficient to show that no such signal was given, are questions for the jury. There is evidence that the train came into Gallamore's view when the automobile was 175 feet from the crossing and traveling at a speed of 40 miles per hour. Whether this allowed sufficient time for a driver using reasonable care under the circumstances to bring the car to a stop before striking the train is a question for the jury. Whether Gallamore, by keeping a reasonable lookout in the direction of his travel, should have discovered the existence of the crossing before the train, itself, came into view and thus, before the train came in view, should have reduced the speed of the automobile so that he could have stopped it in safety after the approach of the train became known to him, is also a question for the jury.

Taking the evidence of the plaintiff as true and viewing it in the light most favorable to him, it is sufficient to support a finding of negligence by either or both of the defendants and that the negligence of each was a proximate cause of the collision and the death of the plaintiff's intestate. We, of course, express no opinion as to whether this evidence, or any portion thereof, is true or as to what inferences should be drawn therefrom. The evidence introduced at a further trial of this action may be different in some material particular. We hold only that the evidence in the record now before us, if true, is sufficient to support a finding that the proximate cause of

the death of the plaintiff's intestate was negligent conduct on the part of either or both of the defendants and the judgment of nonsuit was error as to each of them.

Reversed.

MOORE, J., not sitting.