Gerald **GIBBS**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY.**

Civ. No. 690.

United States District Court,
E. D. North Carolina,
Washington Division.

April 25, 1972.

240

William H. Holdford, of Narron, Holdford & Babb, Wilson, N.C., for plaintiff.

Edward N. Rodman, of Rodman & Rodman, Washington, N.C., for defendant.

## MEMORANDUM OPINION AND ORDER

LARKINS, District Judge:

This cause came before this Court for trial on March 20, 1972, in a civil action to recover $350,000.00 in damages for injuries allegedly suffered by plaintiff because of negligence of the defendant in causing a car-train accident at a railroad crossing. Trial was before this Court sitting without a jury as both parties waived trial by jury.

## EVIDENCE

### A.  Plaintiff's Evidence

The plaintiff's evidence illustrating the intersection of U. S. Highway 264 and the Norfolk Southern track was impressive. The results of a field survey, a scale map, was introduced, showing distances and landmarks of the area surrounding the intersection. Significant landmarks illustrated by the map are described as follows:

(1) a service station facing U. S. Highway 264, the southwest corner located approximately 400 feet southeast of the crossing, the building extending to a point approximately 525 feet southeast of the crossing;

(2) Wickes Building Supply Company, facing U. S. Highway 264, the southwest corner located approximately 625 feet southeast of the crossing, the building extending to a point approximately 1100 feet southeast of the crossing;

(3) a canal located just west of Wickes Building Supply Company running north-south from the highway to the railroad track;

(4) a gate, on a spur track, located directly across from a point on the railroad track 645 feet east of the crossing; and

(5) a track switch located on the railroad track 417 feet from the crossing.

The plaintiff introduced a film taken from the cab of the train that indicated various views of the crossing and of the highway. Still pictures were also introduced illustrating the intersection.

Mr. J. Raymond Harris, a farmer from Winterville, North Carolina, who witnessed the collision, testified on behalf of the plaintiff to the following effect: On August 28, 1966, he and his wife were traveling towards Raleigh on U. S. Highway 264 and at Marlboro, North Carolina, the car which the plaintiff was driving passed his car. They followed the plaintiff's vehicle and as they approached the crossing his car was

approximately 250 feet behind the car driven by the plaintiff. He testified that he saw the flashing signal lights before he got to Wickes Building Supply warehouse and that he saw the train. Mr. Harris saw the plaintiff apply his brakes and testified that he kept them on, and that plaintiff's car turned around and skidded onto the tracks. Mr. Harris' testimony indicated that at the time the plaintiff's car skidded, the train, from his view, was behind Wickes Building Supply and when it came into view its speed was about 15 miles per hour. At no time did Mr. Harris hear a train whistle or bell. He saw the train hit the car and push it down the track. At the time of the collision Mr. Harris did not hear any whoosh of air or scraping of metal, or see any sand falling on the track. At this point Mr. Harris testified that he was about 800 feet down the road. The time interval between the time the Gibbs car stopped upon the track and the time the train struck the car was approximately one-half a minute. Once Mr. Gibbs' car stopped upon the track, Mr. Harris could no longer see Mr. Gibbs in the car. Mr. Harris on direct examination stated that the speed of plaintiff's car at a point approximately 1000 feet from the crossing was between 40 and 50 miles per hour, but upon cross examination stated that he could not tell the speed of the plaintiff's car.

Mrs. J. Raymond Harris, riding in the same vehicle with her husband at the time of the collision, testified to the following effect: She first saw the train after they had passed the Shamrock Restaurant, and saw the blinking signal lights when their car was between the Shamrock and Wickes Building Supply. The Shamrock Restaurant is located approximately 1500 feet southeast of the crossing. As the Harris car passed the Shamrock, the plaintiff's car was approximately 250 feet in front of them. As the Harris car approached the intersection she did not hear any bell or whistle. The Harris car was about 250 feet behind the plaintiff's car when he put his brakes on, went into a spin,

and made a U-turn. At this time the train was somewhere behind Wickes Building Supply, and the Harris car was in front of Wickes Building Supply. She saw the front of the train when their car was between Wickes Building Supply and the service station. Mrs. Harris stated that 20 to 30 seconds had elapsed between the time plaintiff's car came to rest on the tracks and the collision. The Harris' car had stopped in front of the service station near the crossing when the collision occurred.

State Highway Patrolman Charles T. Herring, an investigating officer, testified to the following effect: He was called to the scene of the crossing collision. The train had backed up and had cleared the crossing. The flashing signal lights were blinking. The plaintiff's car was 792 feet down the tracks from the point of impact. He found skid marks on the highway, a total of 219 feet from where they began on the highway to where they stopped 10 feet from the edge of the highway.

Mrs. Icabod Allen, whose home borders the railroad track, testified that she heard a noise and upon going outside saw a train with a car in front of it which the train seemed to be picking up and slamming down, and that the train stopped about 100 feet from her house. She did not recall hearing any train whistle, but stated that since they had lived there 26 years, she was not conscious of the whistle. Mrs. Allen's home is approximately 900 feet from the crossing.

Mr. Gustave GeGauff, a consulting engineer, found to be an expert in the field of civil engineering, made calculations to normal braking distances and emergency braking distances. The reliability and validity of his calculations were questioned upon cross examination.

Mrs. Madeline Gibbs Bunch testified as to the physical and mental condition of the plaintiff prior to and subsequent to the collision. Hospital records and the deposition of Dr. William Knox Kinlaw, Jr., a neurosurgeon who treated the plaintiff, indicated that Gibbs suffered

serious and permanent injuries. Ira Blount Gibbs, brother of the plaintiff, described the plaintiff's economic background and work prior to the accident. The plaintiff testified that he had no recollection of the accident and described his injuries.

At the end of the plaintiff's evidence, the defendant moved for a judgment of dismissal, which this Court took under advisement. In support of the motion, the defendant contends that the evidence taken in the light most favorable to plaintiff failed to establish actionable negligence on part of the defendant and that it established contributory negligence on the part of the plaintiff as a matter of law. The Court shall proceed to rule on defendant's motion at this time. Interpreting the plaintiff's evidence in the light most favorable to the plaintiff, this Court finds that it tends to show negligence on part of the defendant as plaintiff's evidence indicates that the locomotive approached the crossing without giving signal by whistle or bell with the signal lights blinking and that about 200 feet from the crossing the plaintiff attempted to stop, applied his brakes and skidded upon the tracks, and that approximately a half a minute later, defendant's train, which was estimated to be traveling about 15 miles per hour, collided with the plaintiff's car. The defendant's motion for a judgment of dismissal at the close of plaintiff's evidence is therefore denied.

B. Defendant's Evidence.

Mr. Clarence D. Desern, locomotive engineer operating train No. 63 at the time of the collision, testified to the following effect: He was operating train No. 63 west of Farmville and was proceeding in a westerly direction along the tracks at the time of the collision with the plaintiff at the railroad crossing which U. S. Highway 264 intersects. The time was 10:30 a. m. on August 28, 1966. The brakeman called his attention to a Corvair automobile approaching the crossing on U. S. Highway 264. At the time he first observed Gibbs' vehicle, the engine was located almost across from the gate on the spur tracks, about 625 feet east of the crossing. Plaintiff's automobile was between Wickes Building Supply and the service station near the intersection at a point approximately 580 feet from the crossing on U. S. Highway 264, traveling at a speed of 60 miles per hour. The car then passed out of the engineer's sight as it traveled by the service station. As the car emerged from behind the service station, the engineer saw it at a point about 360 feet from the crossing. The train was located near the intersection of the track and a spur track 417 feet from the crossing. His opinion as to the speed of the train at the time he first saw the car was 30 miles per hour. The speed of the train when he saw the car again was 32 miles per hour. He explained the increase in speed to the fact that he had been continually accelerating the train. When he noticed the car again it was in a slide and had turned and skidded backward onto the track. The engineer put the train in emergency when he noticed plaintiff's car skidding. The car came to rest with the left rear wheel on the north rail, the remainder of the car on the highway. When the car came to rest on the tracks, the engine was between 150–200 feet from the crossing. Prior to the collision he had seen Mr. Gibbs sitting in the car looking toward the engine. He did not see Gibbs attempt to get out. The engine collided with the car, the point of impact being the small window behind the door. The train lifted the car and carried it halfway to the dirt road. Upon coming to a halt, he got out to help the driver of the car and found him with his head in the front seat with his legs over the rear seat. Approaching the crossing the engineer blew the whistle prior to reaching the whistle post. The bell was activated prior to the whistle. The sound of the whistle consisted of two long blasts, one short, and one long blast lasting until the train reached the crossing. On cross examination, it was noted that Mr. Desern had told an investigator that he

had first seen the car before it passed Wickes. Mr. Desern did not remember making that statement. Also, Mr. Desern's testimony as to the location of the train at various points was slightly inconsistent with markings he had made on a map prior to trial.

Mr. J. D. Pleasants, brakeman on train No. 63 on the date of the collision, testified to the following effect: He first saw Mr. Gibbs' car before it traveled in front of Wickes Building Supply moving in the direction of the crossing. He called the engineer's attention to the car. Pleasants again saw the car after it passed Wickes Building Supply and he saw it go into a skid. The car came to a stop with the rear wheels centered between the rails with the left rear two to three feet off of the pavement east of the crossing. Mr. Gibbs was sitting under the steering wheel looking directly at him. His opinion was that the train was traveling between 30 and 35 miles per hour. He estimated that the speed of the car when he first saw it was 60 miles per hour. Prior to the collision the engineer gave two long blasts, one short blast, and one long blast on the train whistle.

Mr. Richard E. Fisher of Westinghouse Air Brake Company qualified as an expert in the field of mechanical engineering and gave testimony as to the emergency braking distance of the train. His calculations were questioned upon cross examination. He stated that the emergency stopping of a train is not too noisy, but there is a whooshing of air. Upon the conclusion of Mr. Fisher's testimony, the defendant rested. The plaintiff then moved for summary judgment on the issue of contributory negligence, the motion being taken under advisement by this Court. The plaintiff rested after putting several exhibits into the evidence. The defendant renewed the motion for judgment of dismissal which was taken under advisement by this Court. The Court shall rule on these motions at this time. As to plaintiff's motion for summary judgment on the issue of contributory negligence, it appears to this Court that such motion should be denied as there are material facts in dispute. Plaintiff's motion is therefore denied. Defendant's motion for judgment of dismissal at the close of all the evidence apparently was made to preserve defendant's rights respecting the motion made after the presentation of plaintiff's evidence which is necessary in jury cases respecting directed verdicts. However, this is a non-jury case in which the Court is required at the close of all evidence to make findings of fact and conclusions of law. Rule 52(a) of the Federal Rules of Civil Procedure. Therefore, this Court denies defendant's motion for judgment of dismissal and shall proceed to make findings of fact and conclusions of law.

## FINDINGS OF FACT BASED UPON STIPULATIONS, TESTIMONY AND RECORD

A.  Undisputed Facts

1.  On August 28, 1966, at approximately 10:30 a. m., Norfolk Southern Train No. 63 collided with an automobile occupied by the plaintiff at the intersection of U. S. Highway 264 and the Norfolk Southern crossing approximately two miles west of Farmville in Pitt County, North Carolina. The defendant's train collided with the left side of the automobile containing the plaintiff.

2.  At the time of the collision the weather was clear and dry and the temperature was approximately 90 degrees.

3.  At the U. S. Highway 264 crossing U. S. Highway 264 runs generally northwest and southeast, and the Norfolk Southern Railroad track runs generally east and west. U. S. Highway 264 is intersected by the railroad tracks at approximately a 32 degree angle and the railroad tracks are straight at least for a mile on either side of the highway.

4.  At the time of the collision the Norfolk Southern Train No. 63 was traveling generally in a westerly direction.

5. Before the automobile occupied by Gerald Gibbs came to a stop on the Norfolk Southern track, it had been traveling generally in a northwesterly direction of U. S. Highway 264.

6. At the time of the collision Norfolk Southern Train No. 63 was a freight train made up of two locomotives and 126 cars. The unloaded weight of the freight train and locomotives was approximately 2,875 tons.

7. Of the 126 cars behind the two locomotives, 49 were loaded. The total weight of the entire train was approximately 4,175 tons.

8. The Norfolk Southern train yard in this area extends from approximately one mile east of U. S. Highway 264 crossing to approximately one and one-half miles east of the train station in Farmville, North Carolina.

9. The distance from the point where the lead engine of Train No. 63 was situate just to the east of Main Street in Farmville, North Carolina at 10:19 a. m. on August 28, 1966, to the U. S. Highway 264 crossing is slightly less than two miles down the Norfolk Southern track.

10. On August 28, 1966, the lead engine of Norfolk Southern Train No. 63 was equipped with a Barco Speed Indicator and Recorder in good operating condition. The speed tape from the recorder was retained for a period of six months following the collision and then destroyed by the defendant.

11. At the time of the collision the plaintiff was 48 years of age, having been born on July 24, 1918.

12. At the time of the collision there were two standard grade crossing flashing signal lights (in the northeast and the southwest quadrants formed by the intersection of the railroad and the highway and located approximately six feet from the edge of the pavement and eighteen feet from the center of the railroad tracks).

13. At the time of the collision there was a standard North Carolina State Highway Commission sign located approximately 605 feet southeast of the railroad crossing to warn approaching northwesterly bound traffic of the existence of the railroad crossing.

14. At all times mentioned herein, the defendant's train was being operated by employees of the defendant railway company within the course and scope of their employment as employees and agents of the defendant.

15. Norfolk Southern Train No. 63 could have accelerated to a speed of 26 miles per hour within a mile from the stopped position at Farmville, North Carolina.

B. Findings as to Disputed Facts

1. The plaintiff was traveling northwest on U. S. Highway 264 prior to the collision maintaining a speed between 40 and 60 miles per hour. As he approached the railroad crossing the plaintiff failed to see the flashing signal lights which were properly operating.

2. The brakeman of the train first noticed the plaintiff's car prior to its passing in front of Wickes Building Supply.

3. The brakeman brought this to the attention of the engineer, who then saw plaintiff's car as it emerged into view on the other side of Wickes, still traveling between 40 and 60 miles per hour. At this point the engine was located near the gate on the spur tracks, approximately 625 feet east of the crossing. The train was proceeding westward on the track at a speed between 30 and 32 miles per hour. The trainmen lost sight of the plaintiff as his car traveled in front of the service station. The trainmen saw the car again as it emerged from in front of the service station. At this point the train was located near the intersection of the main track and the spur track 417 feet from the crossing.

4. At a point approximately 200 feet from the crossing, the plaintiff apparently became aware of the approaching train, applied his brakes hard, turned completely around while skidding 219 feet, and came to a stop on the railroad

track. The rear wheels of the car were between the rails. When plaintiff's car began to skid, the train was between 150 and 417 feet from the crossing. The engineer, upon observing plaintiff skidding, put the train into emergency by applying the emergency brakes.

5. The plaintiff, after the car came to rest on the tracks, was sitting under the steering wheel of his car looking at the train. The plaintiff apparently made no attempt to get out of the car.

6. The car was on the track only 4 or 5 seconds prior to the collision.

7. The engine collided with the car, the point of impact being the left rear of the car. The train lifted the car and slammed the car up and down 792 feet along the track.

8. As the result of this accident, the plaintiff received terrible injuries from which he will never fully recover.

9. The plaintiff had an unobstructed view of the railroad track prior to reaching Wickes Building Supply, between Wickes Building Supply and the service station, and between the service station and the crossing.

10. While approaching the crossing, the engineer blew the train whistle and activated the bell prior to reaching the whistle post. The whistle was sounded until the train reached the crossing.

## CONCLUSIONS OF LAW

The primary issues in this action are as follows:

(1) Was the plaintiff injured by the negligence of the defendant?

(2) If so, did plaintiff, by any negligence on his part, contribute to such injuries?

(3) If so, notwithstanding the contributory negligence of the plaintiff, did the defendant have the last clear chance to avoid injuring the plaintiff?

(4) What amount, if any, is the plaintiff entitled to recover of the defendant?

■ As this Court has jurisdiction over this action through diversity, the substantive law of the State of North Carolina shall be applicable.

■ It is the duty of the railroad "to give timely warning of the approach of its train to the crossing by blowing of the whistle or horn, by ringing the bell or by some other device reasonably calculated to attract the attention of those approaching the crossing upon the highway." Cox v. Gallamore, 267 N.C. 537, 148 S.E.2d 616 (1966). Railroads, like the traveling public, are under the legal duty to exercise due care to avoid a crossing accident. The railroad is held to the rule of a reasonably prudent man. Johnson v. Southern R. Co., 255 N.C. 386, 121 S.E. 580 (1961), 90 A.L.R.2d 344. From the greater weight of evidence it appears to this Court that there was no original negligence on the defendant's part as the facts show that the brakeman and engineer were keeping a proper lookout as the train approached the crossing, that the engineer gave proper warning of the train's approach by activating the bell and whistle prior to reaching the whistle post, and that the grade crossing flashing signal lights were properly operating.

■ The evidence, especially that of the plaintiff, establishes that the plaintiff failed to keep a proper lookout and contributed to his own injury. Plaintiff's own evidence indicates that the railroad crossing signal lights were operating properly, that the plaintiff had an unobstructed view of the track at several points prior to reaching the crossing, that upon becoming aware of the approaching train, the plaintiff braked his car, skidded, completely turned around, and landed on the tracks, and that a Mr. Harris traveling behind the plaintiff saw the train when his car was 1200 feet from the crossing, saw the flashing signal lights, and saw the train when their car was between Wickes Building Supply and the service station near the intersection. The defendant's evidence establishes that the engineer gave proper warning of the approaching train by sounding the

train whistle and bell. In Cox v. Gallamore, supra, the Supreme Court of North Carolina stated the following:

"A railroad crossing is, in itself, a warning of danger to a driver who knows of it or who, by keeping a reasonable lookout as he drives along the highway, could discover its existence in time to stop his vehicle before entering the path of a train proceeding over the crossing."

■ This Court having found that the plaintiff was contributorily negligent, must now determine whether the doctrine of last clear chance is applicable. "The doctrine of last clear chance does not arise until it appears that the injured person has been guilty of contributory negligence." Irby v. Southern R. Co., 246 N.C. 384, 98 S.E.2d 349 (1957), 70 A.L.R.2d 1. To support the doctrine of last clear chance the plaintiff has the burden to show that he placed himself in a dangerous situation by his own negligence; that the defendant saw or by the exercise of reasonable care should have discovered, the perilous position of the plaintiff in time to avoid injuring him; and that notwithstanding such notice and imminent peril, he negligently failed to use every reasonable means at his command to avoid the impending injury; and that the injury occurred as the proximate result of the failure to exercise such care. Irby v. Southern R. Co., supra. The evidence clearly shows that plaintiff's contributory negligence placed him in a perilous position. Of course, plaintiff was in a perilous position upon his car coming to a rest upon the track; however, plaintiff's peril actually began when plaintiff lost control of his automobile. At this point the trainmen did discover the perilous position of the plaintiff, and upon such discovery, applied the train's emergency brakes in attempt to avoid collision with the plaintiff. The defendant exercised such care as would a reasonable man under similar circumstances. The doctrine of last clear chance is not applicable where after discovery of the peril the defendant does not have sufficient oppor-

tunity to avoid the collision by exercising due care. Dowdy v. Southern Ry. Co., 237 N.C. 519, 75 S.E.2d 639 (1953). Norfolk Southern Railway Train No. 63, that was traveling between 30 and 35 miles per hour, was put into emergency application between 150 and 417 feet from the railroad crossing upon the engineer seeing the plaintiff's car in a skid, and such train did not come to a stop until it was 792 feet down the track, did not have the last chance to avoid collision with plaintiff whose automobile had skidded to a stop on the railroad track. Therefore, this Court finds that the plaintiff is not entitled to recover any damages from the defendant, as the injuries suffered by the plaintiff were proximately caused by plaintiff's own negligence.