SOUTHERN RAILWAY COMPANY v. AKERS MOTOR LINES, INC., AND W. P. ELLIS.

(Filed 12 October, 1955.)

1. **Railroads § 4—Evidence held to show contributory negligence as a matter of law on part of motorist in crossing accident.**

   The evidence tended to show that defendant employee was thoroughly familiar with the railroad grade crossing in question, that he looked in the direction from which plaintiff's train was approaching when 100 feet from the crossing, at which place he could see 100 feet up the track, that he did not look again until he was about 35 feet from the crossing, when he saw the train but was too close to the track to stop his vehicle before reaching the crossing, and that he then pressed the accelerator in an attempt to clear the crossing before the train. There was no evidence that the train was traveling at excessive speed. *Held:* The evidence discloses contributory negligence on the part of defendant employee barring recovery on the employee's and employer's cross-actions against the railway company.

2. **Same—**

   The duty of a motorist to look and listen before driving upon a railroad grade crossing requires him to do so at a time when the precaution will be effective.

3. **Same—**

   It is error for the court to charge upon a party's contention as to the negligence of a railway company in failing to maintain gates or gongs or other signaling devices at a crossing without referring to the statute (G.S. 136-20) giving the State Highway and Public Works Commission exclusive jurisdiction to decide whether a railway company should maintain gates, gongs, signals or other approved safety devices at a particular crossing.

4. **Evidence § 26: Negligence § 18—**

   Evidence of other conditions or events may be used, within limits, to prove a habit or custom under like conditions, or to show the standard of care to which it is claimed a party ought to have conformed, but did not, but in order for such evidence to be competent, there must be a substantial similarity in the other conditions or events.

5. **Railroads § 4—**

   Evidence of protective devices maintained by a railroad at crossings within the bounds of a municipality, where noises or diversions exist, traffic is congested, and trains move frequently, is incompetent to show that the railway company was negligent in failing to maintain such protective devices at a crossing in a rural portion of the county on tracks upon which only one train daily passes.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by plaintiff from McKeithen, Special J., May Term, 1955, GASTON.

Civil action to recover damages sustained by plaintiff in a train—tractor-trailer railroad crossing collision in which each defendant pleads a cross action.

The grade crossing at which the collision occurred is the intersection of U. S. 158 and the branch of plaintiff railroad extending from Oxford to Henderson. The intersection is north of Henderson and outside its corporate limits and is approximately at right angles. At this particular point the railroad extends in a north-south direction and the highway in an east-west direction. Plaintiff's train was traveling south, and the tractor-trailer was traveling in a westerly direction.

Defendants' evidence tends to show that there is a grove of trees along the eastern side of the railway which stops 84 feet north of the highway. Some 134 feet east of the railway and beginning at a point about 63 feet north of the highway were two outdoor advertising billboards. The highway approaches the crossing at a slight grade, and the crossing is substantially on the crest. To the east of the crossing 445 feet, along U. S. 158 was a North Carolina highway railroad crossing sign, and the standard railroad crossing warning was 17 feet east of the crossing. No automatic signals or warning devices were maintained by the plaintiff at the crossing.

The individual defendant, the employee of the corporate defendant, who was operating the tractor-trailer, passed over this crossing four to six times a week for two years prior to the accident. He stated he had never seen a train at this crossing prior to the one which hit him.

At about 1:30 p.m. on 23 October 1952, the individual defendant, operating a tractor-trailer of the corporate defendant, approached the crossing from the east. He testified that at a point 100 feet away from the crossing he could see about 100 feet up the railroad track. Other witnesses for the defendants testified that at a point 150 feet east of the crossing one could see 150 feet up the track, north of the crossing. Ellis testified that he was not less than 100 feet from the track when he looked to the right and left and did not see the plaintiff's train. He testified that while he would not say that the bell did not ring or the whistle did not blow, he did not hear either. As he did not hear any bell or whistle, when he reached the foot of the rise he picked up speed and arrived at the crossing at about 20 m.p.h. When he was about 30 or 35 feet from the crossing he saw the train approaching from the north. It would have taken about 150 feet to stop his vehicle traveling

at 20 m.p.h. So, "I just kept mashing the gas and thought maybe I could beat him across."

The plaintiff offered substantial evidence tending to show that the engineer of plaintiff rang the bell and blew the whistle as he approached the crossing, and that one traveling west on the highway could see to the north in ample time to stop his vehicle before reaching the zone of danger. There is no evidence that the train was traveling at a high rate of speed. Indeed, some of the witnesses fixed its speed at about five miles per hour.

Issues were submitted to and answered by the jury in favor of the defendants and against the plaintiff. From judgment on the verdict, plaintiff appealed.

*W. T. Joyner, James Mullen, and Mason & Mason for plaintiff appellant.*

*Jones & Small, L. B. Hollowell, and Basil Whitener for defendant appellees.*

BARNHILL, C. J. The history of the occurrence which is the subject matter of this action is graphically stated by Ellis himself as follows:

"I was doing 35 to 40 miles per hour as I approached the bottom of the incline leading to the crossing, but I started slowing down as I approached the crossing . . . As I completed the rise and approached closer to the crossing, I started to slow up. I looked to the left toward Henderson and did not see any train or hear any whistle. I then looked to the right and did not see any train or hear any whistle.

"When I finished looking and listening I was less than 100 feet from the track. I proceeded forward, put my foot on the accelerator to go ahead and cross the tracks, and I looked and saw this train coming out from behind the trees and billboard and hit my tractor . . . I did not see any train until I was less than 100 feet from the crossing. At that time I was doing about 20 miles per hour. When I saw the train, I had my foot on the gas, and I looked and saw this train right on me. I did not have time to stop, so I just kept mashing the gas and thought maybe I would beat him across. I could not have stopped my tractor-trailer after the train came out from behind the trees. . . ."

"I had crossed this crossing four to six times a week and saw the tracks every time. At a point 100 feet away from the crossing you can see about 100 feet up the railroad. . . . I was not less than 100 feet from the track when I looked to the left and then to the right and didn't see any train . . . At that time I was maybe 150 to 200 feet away. Seeing nothing, I stepped on the accelerator and picked up a little bit of speed. I arrived at the crossing at about 20 miles per· hour . . .

When I .first saw the train, I couldn't stop the tractor. I would say I was 25 or 30 feet from the track. It takes about 150 feet .to stop the tractor and trailer at 20 miles an hour with good condition . . . The first time I saw the train was right there just before it hit my tractor."

Thus it appears from the evidence offered by the defendants that Ellis was thoroughly familiar with the crossing at which the accident occurred. He had used the crossing four to six times per week over a period of two years. He knew that if he looked to the north within approximately 100 feet of the track he could see a train approaching 100 feet up the track. Yet he looked first at a time when he says he could not see and then looked no more until he was within 30 or 35 feet of the track. He knew he was approaching a zone of danger. Yet he failed to look until it was too late for him to stop before reaching the crossing. Likewise, when he looked· the second time and saw the train approaching, he had failed to bring his vehicle under such control that he could stop it before reaching the zone of danger. Instead, he stepped on the accelerator and attempted to "beat him across."

Thus it clearly appears that his conduct constitutes contributory negligence as a matter of law, and decision on the motion of plaintiff for judgment of nonsuit on the cross actions of the defendants is controlled by *Parker .v. R. R.*, 232 N.C. 472, 61 S.E. 2d 370, and the cases there cited.

It does not suffice to say that Ellis looked and listened. "His looking and listening must be timely, *McCrimmon v. Powell, supra* (221 N.C. 216, 19 S.E. 2d 880), so that his precaution will be effective. *Godwin v. R. R., supra* (220 N.C. 281, 17 S.E. 2d 137). It was his duty to 'look attentively, up and down the track,' in time to save himself, if opportunity to do so was available to him. (Citing authorities.) Here the conditions were such that by diligent use of his senses he could have avoided the collision. His failure to do so bars his right to recover. *Godwin v. R. R., supra.*" *Parker v. R. R., supra.*

His negligence likewise bars the right of the corporate defendant to recover damages to its tractor-trailer.

It follows that there was error in the ruling of the court denying plaintiff's motion to dismiss the cross actions as in case of involuntary nonsuit.

The defendants relied upon the failure of plaintiff to maintain gates or gongs or other like signaling devices at the crossing as evidence of its negligence. The court instructed the jury as to defendants' contentions in respect thereto and undertook to state the applicable law. This must be held for reversible error committed on the first issue as to the negligence of the defendants for the reason the court overlooked and failed to make reference to the provisions of G.S. 136-20. By the enact-

ment of this section of the Code the Legislature has taken from the railroads authority to erect gates or gongs or other like signaling devices at railroad crossings at will and has vested exclusive discretionary authority in the State Highway and Public Works Commission to determine when and under what conditions such signaling devices are to be erected and maintained by railroad companies. This section works such a radical change in the law in this respect that we are constrained to quote the material portion of the statute in full. It is as follows:

"(a) Whenever any road or street forming a link in or a part of the State highway system, whether under construction or heretofore or hereafter constructed, shall cross or intersect any railroad at the same level or grade, or by an underpass or overpass, and in the opinion of the chairman of the State Highway and Public Works Commission such crossing is dangerous to the traveling public, or unreasonably interferes with or impedes traffic on said State highway, the Commission shall issue notice requiring the person or company operating such railroad to appear before the Commission . . . and show cause, if any it has, why such railroad company shall not be required to alter such crossing in such way as to remove such dangerous condition and to make such changes and improvements thereat as will safeguard and secure the safety and convenience of the traveling public thereafter . . .

"(b) Upon the day named, the Commission shall hear said matter and shall determine whether such crossing is dangerous to public safety, or unreasonably interferes with traffic thereon. If it shall determine that said crossing is, or upon the completion of such highway will be, dangerous to public safety and its elimination or safeguarding is necessary for the proper protection of the traffic on said State highway, the Commission shall thereupon order the construction of an adequate underpass or overpass at said crossing or it may in its discretion order said railroad company to install and maintain gates, alarm signals or other approved safety devices if and when in the opinion of said Commission upon the hearing as aforesaid the public safety and convenience will be secured thereby. . . .

"(f) *The jurisdiction over and control of said grade crossings and safety devices upon the State highway system herein given the Commission shall be exclusive.*" (Italics supplied.)

The court likewise erred in permitting the defendants to introduce evidence with reference to the location of other crossings in and around Henderson and the protective devices maintained thereat.

Where evidence of conditions is offered to prove a habit or custom under such conditions, the circumstances of the conditions must not be so dissimilar that the evidence is without probative value. Stansbury, N. C. Evidence, 168, sec. 89. II Wigmore on Evidence, 316, sec. 379,

states the principle as follows: ". . . it is obvious that there must be such a similarity or unity of conditions that what is done by one or more persons or sets of persons may be taken as indicating the probable general habit of the class of persons *under similar circumstances.*" (Italics supplied.)

It is true that other conditions or events can be used, within limits, to show a standard of care under which it is claimed a party ought to have conformed but did not. But there must be more substantial similarity than exists in this case.

The intersections about which evidence was offered were within the bounds of the City of Henderson where noises and diversions exist, traffic is congested, and trains move frequently. Here the intersection is in the rural portion of the county, and only one train passes the crossing daily.

On plaintiff's cause of action there must be a new trial. The judgment entered on the cross actions of the defendants must be reversed.

On plaintiff's cause of action

New trial.

On defendants' causes of action

Reversed.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.