LULA F. MEDLIN, ADMINISTRATRIX OF THE ESTATE OF BRENDA JEAN FORD, DECEASED v. SEABOARD AIR LINE RAILROAD COMPANY.

(Filed 18 March 1964.)

**Railroads § 5—**

Evidence tending to show that intestate, with an unobstructed view of the approaching train, drove onto the track in front of the locomotive, which had its headlights burning, and was killed in the collision between the locomotive and the automobile, *is held* to disclose contributory negligence barring as a matter of law recovery for wrongful death.

APPEAL by plaintiff from *Hobgood, J.,* August 12, 1963 "A" Civil Session of MECKLENBURG.

Action for wrongful death. Plaintiff appeals from a judgment of involuntary nonsuit entered against her at the close of all the evidence.

*Ledford & Ledford for plaintiff appellant.*
*Cansler & Lockhart for defendant appellee.*

PER CURIAM. Plaintiff's evidence tends to show these facts:

Rural Road 1008 crosses the track of the defendant Railroad at grade in the hamlet of Indian Trail at Benton's Store. About 7:30 p.m. on March 31, 1961, two automobiles traveling south on Highway No. 1008 approached this crossing. There was a heavy drizzle and visibility was poor. The first car was operated by Reginald Gaddy, aged nineteen; the second, close behind the first, was driven by plaintiff's intestate, Brenda Ford, aged sixteen. The decedent was a high school student on her way to a dance at the school gymnasium. She had lived in the vicinity of Indian Trail all of her life and was very familiar with the crossing.

Upon the trial Gaddy testified that as he neared the crossing his mind was on other things and he looked neither left nor right. Not until his front wheels were on the track did he hear the whistle of an approaching train. He then looked to his right and saw its headlights about two hundred and twenty-five feet to the west of the crossing. He "showered down on the gas" and managed to clear the track, but the train struck the vehicle being operated by Brenda Ford. Her body was found on the south side of the railroad about fifty feet east of the crossing. The twenty-six car train carried her automobile about one mile down the track before it stopped. Its brakes had been applied in emergency approximately sixty feet from the crossing when the fireman informed the engineer that the deceased was not going to stop. This particular train, No. 96, passed through Indian Trail every night at about the same time.

· Witnesses for the plaintiff who were in the vicinity at the time of the collision testified that if the train whistle blew or its bell rang as it approached the crossing at a speed of about sixty miles per hour, the sound did not register on them. None, however, were willing to swear positively that the train did not so signal at the Benton's Store crossing.

Witnesses for the defendant testified positively that the whistle was blowing and the bell was ringing. J. B. Ivey who crossed the tracks from the south in front of the oncoming train, testified that its headlight was burning brightly and its whistle began blowing when the train was three hundred feet west of the crossing. After he stopped on the north side of the track, he observed Gaddy and Miss Ford approaching at a moderate, unabated rate of speed. The decedent followed the Gaddy vehicle onto the crossing without looking either left or right. Others testified that the crossing was unobstructed. From the south side of Benton's Store it was ninety-six feet to the track. The track was straight and in the daytime a person standing twenty-five feet north of the crossing could see for three quarters of a mile to the west. At night the gleam of a train's headlight could be seen continuously for the same distance.

In spite of the positive evidence to the contrary, if it be conceded that the train failed to signal its approach to the crossing, all the evidence manifests that negligence on the part of plaintiff's intestate was at least one of the proximate causes of her tragic and untimely death. When conditions are such that a diligent use of the senses would have avoided injury, a failure to use them constitutes contributory negligence which will bar a recovery. We have said that a railroad crossing is of itself a notice of danger. While a traveler has the right to expect a timely warning from the train crew, a failure to give it will not justify an assumption by him that no train is approaching. "It is still his duty to keep a proper lookout . . . and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty." *Herndon v. R. R.*, 234 N.C. 9, 65 S.E. 2d 320; *Owens v. R. R.*, 258 N.C. 92, 128 S.E. 2d 4.

The deceased had a clear, unobstructed view of the approaching train. If she had looked she would have seen it. Instead, she blindly followed Gaddy onto the track in front of a locomotive with its headlight burning. He escaped the consequences of his folly; she unfortunately paid for the negligence of them both.

The judgment of involuntary nonsuit must be

Affirmed.