BERTHA C. PRICE v. SEABOARD AIR LINE RAILROAD CO.
AND
BROOKS M. PRICE v. SEABOARD AIR LINE RAILROAD CO.
AND
LINDA CAROL PRICE, BY HER NEXT FRIEND, BROOKS M. PRICE, v.
SEABOARD AIR LINE RAILROAD CO.
AND
JANICE MARIE PRICE, BY HER NEXT FRIEND, BROOKS M. PRICE, v.
SEABOARD AIR LINE RAILROAD CO.

(Filed 14 June 1968.)

1. Railroads § 5—

A railroad is under a duty to exercise reasonable care to maintain its crossings over public highways in a reasonably safe condition so as to permit safe and convenient passage over them.

**2. Same—**

A railroad company is only liable for a defect or condition on its right of way over a public crossing which is caused by its negligence and which renders a crossing unnecessarily dangerous and unsafe to persons using it.

**3. Same—**

Plaintiff's evidence tending to show that her automobile stalled on defendant railroad's grade crossing when it ran into a hole in the asphalt between the tracks and was struck by defendant's train *is held* sufficient to be submitted to the jury on the issue of defendant's negligence in maintaining its crossing.

**4. Same—**

A railroad grade crossing is in itself a warning of danger.

**5. Same—**

Though a traveler and the railroad have equal rights to cross at a grade crossing, the traveler must yield the right of way to the railway company in the ordinary course of its business.

**6. Same—**

In approaching a grade crossing both trainmen and travelers upon the highway are under a reciprocal duty to keep a proper lookout and to exercise that degree of care which a reasonably prudent person would exercise under the circumstances to avoid an accident at the crossing.

**7. Same—**

A railroad company is under a duty to give travelers timely warning of the approach of its train to a public crossing, but its failure to do so does not relieve a traveler of his duty to exercise due care for his own safety, and the failure of a traveler to exercise such care bars recovery when such failure is a proximate cause of the injury.

**8. Same—**

Plaintiff's evidence tending to show that in approaching a grade crossing with which she was thoroughly familiar she had an unobstructed view of the crossing for over 400 feet, but that her view down the track to her left was partially obstructed by a bank and vegetation, that she was traveling 30 to 35 miles per hour, that she saw the top of the approaching train over the bank about 300 feet down the track, that she immediately applied her brakes but was unable to stop her automobile before it went on the railroad where it stalled and was struck by the train, *is held* to show contributory negligence on the part of plaintiff as a matter of law.

**9. Automobiles § 108—**

Contributory negligence of the wife while driving her husband's family purpose automobile bars the husband's right to recover against a third person for damage to his automobile.

**10. Parent and Child § 5—**

The parent is liable for medical expenses incurred in the necessary treatment of his minor unemancipated child injured in an automobile collision, and the right of action to recover for such expenses lies in the parent and not the child.

**11. Same; Automobiles § 108—**

Contributory negligence of the wife while driving her husband's family purpose automobile bars the husband's right to recover against a third person for expenses incurred in the necessary treatment of his unemancipated children injured in the collision.

**12. Railroads § 7; Automobiles § 95—**

Where a passenger in a car is injured in a collision at a grade crossing and the passenger has no control over the driver in the operation of the car, and the parties are not engaged in a joint enterprise, the negligence of the driver will not be imputed to the passenger and will not bar recovery against the railroad for the passenger's injury or death unless the negligence of the driver is the sole proximate cause of the accident or unless it constitutes intervening negligence insulating the negligence of the railroad company as a matter of law.

**13. Negligence § 8—**

Negligence of one party cannot be insulated by the negligence of another so long as the negligence of the first continues to be a proximate cause of the injury.

**14. Railroads § 7; Negligence § 8; Automobiles § 93—**

In an action by automobile passengers against a railroad, where plaintiffs' evidence tends to show negligence by the driver of the automobile and by the railroad as proximate causes of the injuries complained of, the driver's negligence not being imputed to the passengers since they had no control over the driving of the automobile and the parties were not engaged in a joint enterprise, nonsuit is improper since the railroad may be exonerated from liability only if the total proximate cause of the injury is attributable to another.

**15. Railroads § 6—**

In an action to recover for a grade crossing accident, an allegation that there were no electrically controlled signals at the crossing is properly stricken upon defendant's motion where there is no showing that the crossing was so dangerous that persons could not use it with safety unless extraordinary protective means were used, there being no statutory requirement that the railroad maintain such signals. The interpretation of G.S. 136-20 in *R. R. v. Motor Lines*, 242 N.C. 676, is disapproved.

**16. Same—**

In an action to recover for a grade crossing accident, an allegation that there were no stop signs at the railroad track is properly stricken upon defendant's motion where there is no allegation that the road governing body has designated the grade crossing in question as a place where vehicles are required to stop pursuant to G.S. 20-143.

**17. Railroads § 5; Negligence § 27—**

In an action to recover for a grade crossing accident, allegations that after the accident the railroad repaired holes in the crossing and removed an embankment which obstructed the view of defendant's tracks are properly stricken upon the defendant's motion, the making of repairs or taking precautions to prevent recurrence of injury being inadmissible to show antecedent negligence or as an admission of previous negligence.

APPEAL by plaintiffs from *Copeland, S.J.,* September 1967 Special Civil Session of UNION.

These are four civil actions which, by consent of all parties, were consolidated for trial and tried together. The first civil action was to recover damages for personal injuries to Bertha C. Price, the wife of Brooks M. Price, resulting from a collision between an automobile driven by Bertha C. Price and defendant's train at a grade crossing on rural paved road #1315 in Union County. The second action was instituted by Brooks M. Price to recover damages for the demolition of his automobile resulting from the said collision between plaintiff's automobile and defendant's train and to recover for medical expenses incurred in the necessary treatment of his two minor, unemancipated children injured in the collision. The third and fourth actions were to recover damages for personal injuries to Linda Carol Price, age 15 years, and Janice Marie Price, age 12 years, daughters of Bertha C. Price and Brooks M. Price, sustained by them in said collision while riding as passengers in the automobile driven by their mother.

From a judgment of compulsory nonsuit of all four actions entered at the close of plaintiffs' evidence, all the plaintiffs appealed.

*Coble Funderburk for plaintiff appellants.*

*Richardson & Dawkins and Cansler & Lockhart for defendant appellee.*

PARKER, C.J. The collision out of which these cases rise occurred about 10:45 a.m. on Saturday, 23 January 1965, a clear and dry day, at a grade crossing over the tracks of the Seaboard Air Line Railroad Company at rural paved road #1315 called the New Town Road. The scene of the collision was situate in a rural section of Union County about one and one-quarter miles southwest of the city limits of Monroe, North Carolina. Rural paved road #1315 is a two-lane secondary asphalt paved road about 16 feet wide and runs in a general east-west direction, and the railroad tracks at the crossing run in a general northeast-southwest direction. There was a double yellow line in the center of rural paved road # 1315 on both sides of the railroad crossing.

The automobile involved in the collision was owned by plaintiff Brooks M. Price and driven by his wife, plaintiff Bertha C. Price. Brooks M. Price was not in the automobile at the time of the collision.

At a pretrial conference the parties stipulated "that the plaintiff Bertha Price, as his agent and servant, she being the wife of Brooks

Price, and that on this occasion her operation of the automobile was within the scope of such agency as this was a family automobile."

At the time of the collision Linda Carol Price, a 15-year-old daughter of plaintiff Bertha C. Price, was riding in the front seat with her mother. Janice Marie Price, a 12-year-old daughter of plaintiff Bertha C. Price, was riding in the back seat as a passenger in the automobile with her mother. In the back seat with her was a cousin, David Couick, about three years old. There is nothing in the evidence tending to show that the two infant passengers had any control over their mother's operation of the automobile.

Bertha C. Price and her two infant children were going from her brother's house to her sister-in-law's house, and the nearest and shortest way to go there was to cross the railroad tracks. The collision between her automobile and the train occurred about a mile from her brother's house. She was proceeding in a generally easterly direction towards Monroe. The highway at that place runs along more or less parallel with the track of the railroad for about a mile before the curve. After the curve, rural paved road #1315 is straight on to the railroad track. Plaintiff Brooks M. Price, husband of Bertha C. Price, went to the scene of the collision on the afternoon that it occurred. He testified on cross-examination: "When I rounded the curve back west of the crossing, I had a clear, unobstructed view of the crossing for some 400 feet." His wife, Bertha C. Price, testified that she did not know how far the road was straight after she rounded the curve. After the road passes the curve, there is an unobstructed view of the crossing for 500 feet.

Harold Couick is the next friend of his son David Couick, who has a suit against the railroad for injuries received by him in the crossing accident, and testified as follows on cross-examination.

"After you turn the curve, heading toward the crossing, you have an unobstructed view of the crossing. I wouldn't say the distance, but you can see the crossing. All the way from the time you pass the curve, you can see the crossing. You can see the cross-bucks on both sides of the crossing if you are looking for them. I am sure you could. If you were looking straight ahead, you would probably see them, but it might not register that they were there. They are there, though, and they were there then, and they were plainly visible. I believe that back west of the crossing in the eastbound lane of rural road #1315 there was on January 23, 1965, a great big white painted railroad X in the eastbound lane."

Coming to the railroad crossing from a westerly direction on the left-hand side of the road was a bank around four and one-half

feet high with a growth of weeds on it about four feet high or maybe a little more. This bank with the weeds reached back up the railroad track for about 200 feet.

Plaintiff Bertha C. Price testified as follows:

"As I came toward Monroe, near the intersection of this crossing, I was traveling about 30 — 35 miles per hour. I was familiar with this road. I had been over it before, and I knew there was a railroad track up there. I cannot say that I definitely remember seeing yellow lines in the road at that time. It was a two-way road. As I came close to the intersection of this road, I looked to my right. I saw nothing. As I looked to the left, I could see the bank on the side of the road, to my left, as I approached. This bank was situated to my left, running along the side of the track, the railroad track. The bank itself was about four feet or more, and there were weeds growing that were four feet and under. Some of them were at least four feet high. I could see nothing beyond those weeds.

"Well, as I came close to the track I must have been 30 - 40 feet from the track. I remember seeing the white cross-arm sign and immediately I saw the train down the track, the top of the train, and my daughter said, 'Mother, look out!' The train was coming from my left. It was, I would say, 300 feet down the track. I saw just the top part of the weeds. I was about 30 - 40 feet, I would say, 40 feet from the track at that time. I immediately applied my brakes and came to a full stop just over the first rail of the track. My right front wheel was over the track.

"Well, the train was at that time about 200 feet down the track. I put the car in reverse and had tried to get off the track. It moved back slightly, but then it stalled. It just wouldn't go back.

"Q. Well, did the engine continue to run?
"A. I don't think it did.

"COURT:

"Did I understand you to say that the engine to your automobile was not running at that time?
"A. I don't think it was running. I think it choked.

"As I came up to track and applied my brakes and stopped, the front of my car seemed to drop down.

"Q. When you put it in reverse, what did you do?

"A. For just a thought, the car moved back. Just for a thought, slightly it moved back.

"It stopped. The train at that time was about 200 feet down the track. I don't know anything else after that. I don't know if I was knocked unconscious or not, I probably was. I came to at the scene of the accident. I do not remember the train hitting the car."

Plaintiff Bertha C. Price further testified that just before the collision occurred she did not hear any whistle or horn or anything. All she says is that she did not hear anything; she is not testifying it was not blowing.

Jim Clontz, a deputy sheriff of Union County, went to the scene of the collision. He thus described the condition of the road between the railroad tracks at that time: "On the right-hand lane of travel, traveling east, the pavement was broken. There was about five to six inches drop-off between the tracks between the railroad tracks. That is on the right-hand lane of travel."

Frank Fowler, a deputy sheriff of Union County, lives close to where the collision occurred. He heard the collision and went to see it. He testified on direct examination as follows: "I observed the condition of the railroad track at the crossing. It had beaten out holes between the tracks at the crossing. In the right-hand lane of travel heading toward Monroe it had beaten out bad, in my opinion, from 4 to 6 inch holes. You could see the crossties in a place or two. The right-hand lane was beaten out and in holes approximately four to six inches deep." He testified on cross-examination: "The asphalt is beaten out in holes. They range from the size of a five-gallon bucket to a tin tub."

In the collision complained of plaintiff Mrs. Bertha C. Price and her two infant children received serious injuries, and the automobile of her husband, Brooks M. Price, was demolished and had no value except for junk.

Plaintiff's allege negligence on the railroad's part, *inter alia,* as follows:

"a. It failed to maintain said crossing in a reasonable and safe condition, but on the contrary allowed the said crossing between its railroad tracks to become broken, chipped and deteriorated until a hole approximately six (6) inches deep had been allowed to accumulate and remain.

"b. That it allowed said crossing to become and remain in said dangerous and defective condition and in such a condition

as to cause vehicles to choke down or stall while being driven over said crossing."

A railroad is under a duty to exercise reasonable care to maintain its crossings over a public highway in a reasonably safe condition so as to permit safe and convenient passage over them by persons exercising ordinary care in the use thereof. A railroad company is not an insurer of the safety of travelers, and it is not required to maintain a foolproof crossing or a crossing where no injury is possible. In general, a railroad company is only liable for a defect or condition on its right of way over a public crossing which is caused by its negligence and which renders crossing unnecessarily unsafe and dangerous to persons having occasion to use the crossing, while in the exercise of reasonable care; and such negligence is a proximate cause of the injuries complained of. *Parrish v. R. R.*, 221 N.C. 292, 20 S.E. 2d 299; *Moore v. R. R.*, 201 N.C. 26, 158 S.E. 556; *Campbell v. R. R.*, 201 N.C. 102, 159 S.E. 327; *Stone v. R. R.*, 197 N.C. 429, 149 S.E. 399; 74 C.J.S. Railroads § 719.

In *Goforth v. R. R.*, 144 N.C. 569, 57 S.E. 209, it is said: "It is just that crossings necessitated by the construction and operation of a railroad should be kept in a safe condition by it." In *Stone v. R. R., supra*, it is said: "As the crossing is on the railroad company's right of way, no one except the company has the right to enter upon the crossing for the purpose of repairing the same."

The duty of a railroad company with respect to the maintenance of a crossing over its track, where its track has been constructed over an established road, whether public or private, is well settled. The duty is prescribed by statute, G.S. 62-224, and has been recognized and enforced by this Court in numerous decisions. *Stone v. R. R., supra.*

Considering plaintiffs' evidence in the light most favorable to them and giving them every reasonable inference to be drawn therefrom, 4 Strong, N. C. Index, Trial, § 21, it would permit a jury to find that the defective condition of the railroad crossing where the accident occurred was occasioned by the negligence of the railroad company and such negligence continued to exist up to the very moment of the collision of the railroad's train with the automobile driven by Mrs. Bertha C. Price which was owned by her husband and in which at the time her two infant daughters were riding, and such negligence was a proximate cause of the injuries to Mrs. Price and her two infant daughters and the destruction of her husband's automobile except for junk, and was sufficient to establish actionable negligence on the part of defendant railroad.

Defendant in its answer denies negligence and pleads contribu-

tory negligence of plaintiff Bertha C. Price as a bar to any recovery on her part.

The evidence offered by plaintiffs presents substantially the following situation: Mrs. Bertha C. Price driving an automobile approaches a grade crossing on a public highway over defendant's track with which she was thoroughly familiar. Upon rounding a curve in the road she had a clear and unobstructed view of the crossing for over 400 feet. She was traveling about 30 - 35 miles an hour. Traveling at that speed, she looked to the right and saw nothing. She looked to the left and saw a bank about four feet high and weeds of about that height growing on the bank. She saw a white cross arm railroad signal and the top part of an approaching train above the weeds about 300 feet down the track to her left. She immediately applied her brakes and was unable to stop her automobile before it went on the railroad tracks where it stalled and was struck by the train.

A railroad grade crossing is in itself a warning of danger. *Ramey v. R. R.*, 262 N.C. 230, 136 S.E. 2d 638; *Bennett v. R. R.*, 233 N.C. 212, 63 S.E. 2d 181; *Coleman v. R. R.*, 153 N.C. 322, 69 S.E. 251; 75 C.J.S. Railroads § 768a.

Where a railroad track crosses a public highway, though a traveler and a railroad have equal rights to cross, the traveler must yield the right of way to the railroad company in the ordinary course of its business. *Arvin v. McClintock*, 253 N.C. 679, 118 S.E. 2d 129; *Gray v. R. R.*, 243 N.C. 107, 89 S.E. 2d 807; *Johnson v. R. R.*, 163 N.C. 431, 79 S.E. 690.

In *Godwin v. R. R.*, 220 N.C. 281, 17 S.E. 2d 137, the Court held, as correctly summarized in headnotes 4 and 5, in our Reports:

"In approaching a grade crossing, both the trainmen and travelers upon the highway are under reciprocal duty to keep a proper lookout and exercise that degree of care which a reasonably prudent person would exercise under the circumstances to avoid an accident at the crossing.

"A railroad company is under duty to give travelers timely warning of the approach of its train to a public crossing, but its failure to do so does not relieve a traveler of his duty to exercise due care for his own safety, and the failure of a traveler to exercise such care bars recovery when such failure is a proximate cause of the injury."

In *Irby v. R. R.*, 246 N.C. 384, 98 S.E. 2d 349, it is said:

"In the instant case plaintiff knew that he was approaching a railroad, and he knew he was entering a zone of danger. He

was required before entering upon the track to look and listen to ascertain whether a train was approaching."

*Northern Pacific R. R. v. Freeman,* 174 U.S. 379, 43 L. Ed. 1014, is apposite. That case had facts somewhat similar to the instant case. In that case it is said in the syllabus: "Where a person approached a railway crossing well known to him, when a coming train was in full view, and he could have seen it while 40 feet distant from the track if he had used his senses, but did not look, or took the chance of crossing the track before the train reached him, and was killed, he was guilty of contributory negligence."

Mrs. Bertha C. Price was thoroughly familiar with this crossing and that a grade crossing over the railroad tracks was there. In not decreasing her speed from 30 or 35 miles per hour as she approached the railroad tracks with her view partially obscured, and when traveling at such a rate of speed that when she saw the train, above the bank and weeds 300 feet away down the tracks, she could not stop, she failed to exercise ordinary care for her own safety. Under the circumstances, she took a chance when she entered a known zone of danger thinking that she could pass over in safety, and lost. Considering her evidence in the light most favorable to her, it affirmatively shows contributory negligence on her part so clearly that no other conclusion can be reasonably drawn therefrom. It must not appear that Mrs. Price's negligence was the sole proximate cause of her injuries, as this would exclude any idea of negligence on the part of the defendant. *Godwin v. R. R., supra.* It is enough if it is contributory to the injury. *Wright v. Grocery Co.,* 210 N.C. 462, 187 S.E. 564. The very term "contributory negligence" *ex vi termini* implies that it need not be the sole cause of the injury. *Fulcher v. Lumber Co.,* 191 N.C. 408, 132 S.E. 9. Our opinion is that Mrs. Price was guilty of contributory negligence and her action against the railroad should have been nonsuited. Our view is supported by our following decisions: *Ramey v. R. R., supra; Medlin v. Seaboard,* 261 N.C. 484, 135 S.E. 2d 52; *Jenkins v. R. R.,* 258 N.C. 58, 127 S.E. 2d 778; *Carter v. R. R.,* 256 N.C. 545, 124 S.E. 2d 561; *Irby v. R. R., supra; Herndon v. R. R.,* 234 N.C. 9, 65 S.E. 2d 320; *Bennett v. R. R., supra; Bailey v. R. R.,* 223 N.C. 244; 25 S.E. 2d 833; *Godwin v. R. R., supra; Harrison v. R. R.,* 194 N.C. 656, 140 S.E. 598; *Coleman v. R. R., supra.*

Defendant in its answer denies negligence and pleads contributory negligence of plaintiff Bertha C. Price as a bar to any recovery on her part, and it also pleads that her negligence was imputed to her husband, Brooks M. Price, and bars any recovery by him for damage to his automobile, and any recovery by him for medical

expenses incurred in the necessary treatment of his two minor, unemancipated children injured in the collision.

The parties at the pretrial conference stipulated in substance that the plaintiff Bertha Price was the wife of Brooks Price, that she was his agent and servant, and that on the occasion complained of her operation of the automobile was within the scope of such agency as this was a family automobile.

Under the above stipulation by the parties, Bertha Price's legal contributory negligence was attributable to her husband, bars any recovery by him for demolition of his automobile, and his case was correctly nonsuited in the trial court. *Russell v. Hamlett,* 261 N.C. 603, 135 S.E. 2d 547; *Dowdy v. R. R.,* 237 N.C. 519, 75 S.E. 2d 639; 65A C.J.S. Negligence § 168 (11), p. 245. It is a generally accepted rule of law that the negligence of a servant acting within the scope of his employment will be imputed to the master, on the familiar doctrine of *respondeat superior.* 5 Strong, N. C. Index 2d, Master and Servant, § 33.

Brooks M. Price also sues to recover for medical expenses incurred by him in the necessary treatment of his two minor, unemancipated children injured in the collision. The liability to pay these expenses is the liability of the father, and not of his two minor children. G.S. 44-49 does not change the common law rule so as to permit the recovery of medical expenses as a part of the minors' cause of action. *Ellington v. Bradford,* 242 N.C. 159, 86 S.E. 2d 925.

This is said in *Kleibor v. Rogers,* 265 N.C. 304, 144 S.E. 2d 27:

> "Where an unemancipated minor child is injured by the negligence of another, two causes of action arise: (1) An action on behalf of the child to recover damages for pain and suffering, permanent injury and impairment of earning capacity after attaining majority; and (2) an action by the parent, ordinarily the father, for (a) loss of the services and earnings of the child during minority and (b) expenses incurred for necessary medical treatment for the child's injuries. *Shipp v. Stage Lines,* 192 N.C. 475, 479, 135 S.E. 339; *White v. Comrs. of Johnston,* 217 N.C. 329, 333, 7 S.E. 2d 825; *Ellington v. Bradford,* 242 N.C. 159, 86 S.E. 2d 925; 3 Lee, North Carolina Family Law § 241, p. 105, note 1.

> "With reference to the two causes of action now under consideration, the prior action in behalf of the minor and the present action by the father, the parties are different and the causes of action are different. *Ellington v. Bradford, supra.* An attempt to combine the two actions in one suit would constitute

a misjoinder of parties and causes of action and such suit would be subject to dismissal if defendant demurred on that ground. *Thigpen v. Cotton Mills,* 151 N.C. 97, 65 S.E. 750; *Campbell v. Power Co.,* 166 N.C. 488, 82 S.E. 842; *Ellington v. Bradford, supra."*

The action of the father here to recover for medical expenses incurred in the necessary treatment of his two minor, unemancipated children is a different cause of action from the actions of his daughters here. We have hereafter ruled that in the two actions of his daughters they are entitled to go to the jury. Under the stipulation here we have ruled that Bertha Price's legal contributory negligence was attributable to her husband, Brooks M. Price, and bars any recovery by him for the demolition of his automobile. In principle we can see no difference in Brooks M. Price's action to recover damages for the demolition of his automobile and his action to recover medical expenses incurred in the necessary treatment of his two minor, unemancipated children injured in the collision, and we hold that his action to recover such medical expenses incurred in the treatment of the injuries of his two minor, unemancipated daughters is barred. This rule does not impair in any way the actions of Linda Carol Price and Janice Marie Price, his two infant daughters, to recover damages as laid down in *Kleibor v. Rogers, supra.*

Defendant did not plead contributory negligence as a bar to recovery by the infant plaintiffs. They were age 15 years and 12 years, were passengers in the automobile driven by their mother, and had no control over the driving of the automobile.

This is said in 4 Strong, N. C. Index, Railroads, § 6:

"Where a passenger in a car is injured in a collision at a grade crossing, and the passenger has no control over the driver in the operation of the car, and the parties are not engaged in a joint enterprise, the negligence of the driver will not be imputed to the passenger, and will not bar recovery for the passenger's injury or death unless the negligence of the driver is the sole proximate cause of the accident or unless it constitutes intervening negligence insulating the negligence of the railroad company as a matter of law.

"However, when the passenger is in control of the operation of the car by the driver, the driver's negligence will be imputed to the passenger and will bar recovery for injury to the passenger."

There is no evidence to show that the two infant plaintiffs were engaged in a joint enterprise. *Jernigan v. Jernigan,* 207 N.C. 831,

178 S.E. 587. From what has been said above, it is manifest that the negligence of Bertha Price was not the sole proximate cause of the accident.

Defendant railroad as held above was guilty of negligence. Its negligence was not insulated by the negligence of Bertha C. Price because the original negligence of the railroad played a substantial and proximate part in the damage to the two infant plaintiffs, which original negligence of the railroad existed up to the very moment of impact. *Moore v. Beard-Laney, Inc.*, 263 N.C. 601, 139 S.E. 2d 879; *Davis v. Jessup*, 257 N.C. 215, 125 S.E. 2d 440; *Watters v. Parrish*, 252 N.C. 787, 115 S.E. 2d 1; *Bryant v. Woodlief*, 252 N.C. 488, 114 S.E. 2d 241, 81 A.L.R. 2d 239; *Shepard v. Mfg. Co.*, 251 N.C. 751, 112 S.E. 2d 380; *Henderson v. Powell*, 221 N.C. 239, 19 S.E. 2d 876; *Harton v. Telephone Co.*, 141 N.C. 455, 54 S.E. 299. If the negligence of the defendant railroad continued to be a proximate cause up to the moment of injury, it cannot be insulated by the negligence of Bertha C. Price. *Watters v. Parrish, supra; Lamm v. Gardner*, 250 N.C. 540, 108 S.E. 2d 847; *Graham v. R. R.*, 240 N.C. 338, 82 S.E. 2d 346; *Yandell v. Fireproofing Corp.*, 239 N.C. 1, 79 S.E. 2d 223; *Lancaster v. Greyhound Corp.*, 219 N.C. 679, 14 S.E. 2d 820.

It is well-settled law in North Carolina that each person whose negligence is a proximate cause or one of the proximate causes of injury may be held liable, severally or as a joint tort feasor. If a person's negligence is in any degree a proximate cause of the injury, he may be held liable, since he may be exonerated from liability only if the total proximate cause of the injury is attributable to another or others. 3 Strong, N. C. Index, Negligence, § 8. Considering the evidence of the two infant plaintiffs in the light most favorable to them and giving them the benefit of every reasonable inference to be drawn therefrom, they have presented sufficient evidence to carry their cases to the jury against the railroad defendant, and the court committed prejudicial error in nonsuiting their cases.

Plaintiffs assign as error the action of the trial court in striking from all the plaintiffs' complaints in paragraph 5 the following words: "That there were no electrically controlled signals at the crossing of Rural Paved Road No. 1315 and the defendant's railroad track; that there were no Stop signs at the said railroad track." In paragraph 5 of plaintiffs' complaint it is alleged that the accident occurred at defendant's railroad crossing on rural road # 1315, which is a paved county road. It is further alleged in their complaint "that to the west of the said railroad track, approximately one hundred and fifty (150) feet from the track was a round, yellow sign with black cross-marks and two letters 'RR' in black, across

the said sign erected on a wooden post, said sign being about seven (7) feet from the ground, and facing west on Rural Paved Road No. 1315; that, standing on the right of way of the defendant's railroad track, facing west and on the south side of the Rural Paved Road No. 1315, was a white, wooden cross-arm with 'Railroad Crossing' written on the cross-arm, and this was erected on a post and was situated about ten (10) feet above the ground."

Harold Couick testified as follows on cross-examination: "After you turn the curve, heading toward the crossing, you have an unobstructed view of the crossing. I wouldn't say the distance, but you can see the crossing. All the way from the time you pass the curve, you can see the crossing. You can see the cross-bucks on both sides of the crossing if you are looking for them. . . . I believe that back west of the crossing in the eastbound lane of rural road #1315 there was on January 23, 1965, a great big white painted railroad X in the eastbound lane." Plaintiff Bertha C. Price testified in part: "Well, as I came close to the track I must have been 30 - 40 feet from the track, I remember seeing the white cross-arm sign and immediately I saw the train down the track, the top of the train, and my daughter said, 'Mother, look out!' The train was coming from my left. It was, I would say, 300 feet down the track. I saw just the top part over the weeds." Plaintiff Brooks M. Price, husband of Bertha C. Price, went to the scene of the collision on the afternoon that it occurred. He testified on cross-examination: "When I rounded the curve back west of the crossing, I had a clear, unobstructed view of the crossing for some 400 feet."

In *Cox v. Gallamore,* 267 N.C. 537, 148 S.E. 2d 616, Lake, J., said for the Court:

"G.S. 136-20, which empowers the State Highway Commission, under certain circumstances, to require a railroad company to install gates, alarm signals or other safety devises at a crossing, does not relieve the railroad from its common law duty to give users of a highway adequate warning of the existence of a grade crossing at which the Commission has not required such devices to be installed. *Highway Commission v. R. R.,* 260 N.C. 274, 132 S.E. 2d 595.

"A railroad crossing is, in itself, a warning of danger to a driver who knows of it or who, by keeping a reasonable lookout as he drives along a highway, could discover its existence in time to stop his vehicle before entering the path of a train proceeding over the crossing. *Ramey v. R. R.,* 262 N.C. 230, 136 S.E. 2d 638; *Stevens v. R. R.,* 237 N.C. 412, 75 S.E. 2d 232. On the other hand, one driving upon a highway is not required to as-

sume that he will come upon an unknown, unmarked railroad crossing at grade level which is not discoverable by keeping a reasonable lookout in the direction of his travel. It is the duty of the railroad to give to users of the highway warning, appropriate to the location and circumstances, that a railroad crossing lies ahead."

This is said in 74 C.J.S. Railroads § 727a:

". . . However, a railroad company ordinarily is not negligent in failing to maintain an automatic alarm, in the absence of statutory requirement, when the crossing is not more than ordinarily hazardous, as where the view at the crossing is unobstructed. In other words, mechanical warnings ordinarily are required only at crossings so dangerous that prudent persons cannot use them with safety unless extraordinary protective means are used."

Defendant relies upon the interpretation of G.S. 136-20 in *Southern Ry. v. Akers Motor Lines*, 242 N.C. 676, 89 S.E. 2d 392. We disapprove the interpretation of that statute in the *Akers* case. See 41 N. C. L. R. 296.

There is no statute in North Carolina obliging a railroad to maintain electrically controlled signals at the crossing of rural paved road #1315 where the accident occurred under the facts here.

There is nothing in the record in this case to show that the grade crossing on rural paved road #1315 is more than ordinarily hazardous, and according to plaintiffs' evidence there was a plain and unobstructed view of the crossing 400 feet away in the direction plaintiff Bertha C. Price was traveling. There is nothing to show that this crossing over this rural road was so dangerous that persons could not use it with safety unless extraordinary protective means were used. Plaintiff Bertha C. Price was thoroughly familiar with this road. She had been over it before and knew that the railroad track was ahead of her. The trial judge correctly struck from the complaints the following language: "That there were no electrically controlled signals at the crossing of Rural Paved Road No. 1315 and the defendant's railroad track."

The trial court struck from the complaint the following: "(T)hat there were no stop signs at the said railroad track."

G.S. 20-143 reads as follows:

"The road governing body (whether State or county) is hereby authorized to designate grade crossings of steam or interurban railways by State and county highways, at which vehicles are required to stop, respectively, and such railways are required

to erect signs thereat notifying drivers of vehicles upon any such highway to come to a complete stop before crossing such railway tracks, and whenever any such crossing is so designated and sign-posted it shall be unlawful for the driver of any vehicle to fail to stop within fifty feet, but not closer than ten feet, from such railway tracks before traversing such crossing. No failure so to stop, however, shall be considered contributory negligence *per se* in any action against the railroad or interurban company for injury to person or property. . . ."

The complaint has no allegation that the road governing body (whether State or county) had designated grade crossing #1315 as a place where vehicles are required to stop. Consequently, there was no legal duty on the railroad to put a stop sign at said railroad grade crossing. The trial court correctly struck from the complaint the language: "(T)hat there were no stop signs at said railroad track."

Paragraph 7 in the complaints in all four cases is identical and reads as follows:

"That at the time hereinafter alleged, the said crossing was in a defective condition and bad state of repair; that the cement in the eastbound lane of travel of Rural Paved Highway No. 1315 had been broken and chipped and shelled away until there had been a depression or chipping off of the cement in the right-hand side of the crossing for eastbound traffic until a sink or depression between the said railroad tracks had been allowed to deteriorate until it was approximately six (6) inches below the level of the top of the railroad tracks; this was repaired by the defendants January 28, 1965, five days after the accident."

Plaintiffs assign as error the striking from paragraph 7 of the complaints the following language: "(T)his was repaired by the defendants January 28, 1965, five days after the accident."

Paragraph 8 of the complaint in all four cases reads:

"That the defendant had allowed a bank to remain at the intersection of the said Rural Paved Road and its tracks on its right of way in the northwest corner of the said intersection and this bank reached a peak of approximately four and one-half (4½) feet at the said intersection and sloped back gradually down for approximately seventy-five (75) feet before it came near to the level of the bed of the defendant's tracks; that, upon this bank and on back to the east, there had been allowed to accumulate and grow upon this bank thick weeds, these weeds having grown to the height of approximately three to four feet and this bank was within eight (8) feet of the defendant's railroad tracks; that the defendant had permitted this condition to

remain which blocked the view of anyone coming in an easterly direction to the said crossing from seeing a train heading in a southwesterly direction on the defendant's tracks and that this condition remained at the time of the collision hereinbefore referred to; this bank was removed by the defendant on May 6, 1965."

Plaintiffs assign as error the striking from this paragraph of the complaint: "(T)his bank was removed by the defendant on May 6, 1965."

It is manifest that the parts of the complaints stricken were inserted by the pleader to show antecedent negligence or an admission of negligence on the part of defendant railroad.

". . . *(T)he making of repairs* or taking added precautions after an accident is not admissible as an admission of previous negligence." Stansbury, N. C. Evidence, 2d Ed., § 180, p. 472, where many of our cases are cited in support of the statement in the text.

This is said in 65A C.J.S. Negligence § 225a:

> "While there is some authority to the contrary, it is the general rule that, where a dangerous, defective, or improper place, method, or appliance is alleged to have resulted in an injury for which damages are sought to be recovered, evidence that, subsequent to the accident or injury complained of, changes or repairs thereof or thereto were made by the person charged, or precautions to prevent recurrence of injury were taken by him, is inadmissible to show antecedent negligence or as an admission of negligence on the particular occasion in question, or to show that the conditions previously existing were in violation of statutory regulations."

To the general rule, as set forth in the quoted sections from Stansbury and C.J.S., established by overwhelming authority, there are some exceptions which are set forth in *Shelton v. R. R.*, 193 N.C. 670, 139 S.E. 232, and also in 65A C.J.S. Negligence § 225. In the light of the admissions in defendant's answers in all four cases, the stricken allegations do not fall within any of the exceptions and were correctly stricken out, but if they do fall within any of the exceptions, which we do not concede, we are of opinion that the striking out of these fragmentary parts in all the complaints does not show prejudicial error.

One judgment was entered in all four cases which were consolidated for trial. The result is this: The judgment of compulsory nonsuit in the cases of Bertha C. Price and Brooks M. Price is affirmed. The judgment of compulsory nonsuit in the cases of Linda Carol Price and Janice Marie Price is reversed.