Raynor v. Foster and Martin v. Foster

---

ALEXANDER RAYNOR v. ONWILLARD JUNIOR FOSTER, JOANNE FOSTER, AND MILDRED JEAN WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF JAMES DANIEL WILLIAMS, DECEASED
— AND —
HAZEL MARTIN v. ONWILLARD JUNIOR FOSTER, JOANNE FOSTER, AND MILDRED JEAN WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF JAMES DANIEL WILLIAMS, DECEASED

No. 7111SC461

(Filed 18 August 1971)

1. **Rules of Civil Procedure § 50— motion for directed verdict**
    A defendant's motion made in a jury trial for a directed verdict under G.S. 1A-1, Rule 50(a), presents substantially the same question as that formerly presented by a motion for judgment of involuntary nonsuit, namely, whether the evidence was sufficient to entitle the jury to pass on it.

2. **Automobiles § 87— negligence in operation of car — insulating negligence — proximate cause**
    The evidence was sufficient for the jury to find that defendant's intestate was negligent in driving too fast and in failing to keep his car under control, and that such negligence was one of the proximate causes of plaintiffs' injuries, where there was evidence tending to show that the car in which plaintiffs were riding as passengers was traveling immediately behind a car driven by defendant's intestate at 4:00 a.m., that it was raining and foggy, that defendant's intestate had drunk a quantity of alcohol, that the cars were traveling at 65 to 70 mph, that the car driven by defendant's intestate rounded a curve leading to a bridge, struck a guardrail of the bridge, overturned on the bridge and came to rest blocking the highway, and that the overturned vehicle was struck by the car in which plaintiffs were riding.

APPEAL by defendant, Mildred Jean Williams, Administratrix of the Estate of James Daniel Williams, from *Hall, Judge,* 25 January 1971 Session of Superior Court held in Johnston County.

These two cases were consolidated for trial and for this appeal. Plaintiffs were guest passengers in an automobile operated by defendant, Onwillard Junior Foster, and were injured when the Foster vehicle collided with an automobile owned by James Daniel Williams and which, immediately prior to the collision, had been operated by Williams. The collision occurred about 4 o'clock a.m. on 1 February 1969 on the southbound lanes of U.S. Highway I-95 about three miles south of the town of Kenly, N. C., at the point where the highway passes over Little River on a bridge. U. S. Highway 95 is a four-lane highway, with two lanes for northbound and two lanes for southbound traffic. The northbound lanes and the southbound lanes cross over Little River on separate bridges. The bridge carrying the southbound lanes is 24-feet wide, each lane being 12-feet wide. The road is generally level, and approaching the bridge from the north there is a slight curve to the right. Earlier on the night of the accident, plaintiffs Raynor and Martin had accompanied defendant Foster to the Forsyth Club, a music and dance place just outside the city limits of Kenly. After staying at the club two or three hours, they left in the Foster automobile, with Foster driving. It was drizzling rain and was foggy, which limited visibility to some extent. They proceeded south on I-95, plaintiffs' evidence being that Foster was driving at speeds between 65 and 70 miles per hour. As they approached the Little River bridge, the headlights on the Foster car disclosed a car, later found to be the Williams vehicle, turned upside down about the middle of the bridge and lying at an angle across the left-hand southbound lane and extending across a portion of the right-hand southbound lane. The Foster car struck the Williams car and then proceeded onward a distance of 360 feet, coming to rest against a pine tree off the road. Plaintiffs were injured as a result of the collision.

The Williams vehicle was damaged extensively and was also burned. Williams' body was found on the following day in Little River. All of the hair was burned from his head, and his face and arm were burned. His death certificate listed the immediate cause of his death as drowning, with conditions giving rise to the immediate cause being listed as acute alcoholism and first and second degree burns.

The guardrail on the right shoulder of the road immediately before entering the bridge from the north was damaged.

Dark blue paint of the same color as on the Williams car was found on the railing. Skid marks led from the point where the paint was found on the railing to the Williams car, a distance of 120 feet. Parts of the taillight lens of the type used on the Williams car were found at the bridge rail in the same general area where the blue paint was found. The trunk lid from the Williams car was found in a burned spot near the pine tree where the Foster car was found. The Foster car was not burned.

Plaintiffs' witness, Ernest Atkinson, testified: He saw Williams and Foster leave the Forsyth Club about the same time. "The Williams car was in front and Foster was right behind him." Williams was driving his car and there was only one person in the car. Atkinson waited a few minutes and then drove his car to the highway. He was delayed at a stop light, and approximately five minutes elapsed from the time Atkinson left Forsyth's place until he arrived at the Little River bridge. When he arrived, he found the Williams car burning, mostly on the inside. He attempted to open the door to see if there was anybody in it. He then moved back away from the car and at that time it exploded.

Plaintiff Raynor testified:

"As we approached the bridge down there, there was a car in front of us and I saw lights off at a distance in front of me. I know that it was in front of me. They had to be taillights on the right-hand side of 95 headed south. . . . The wreck bridge is the bridge I'm speaking about and I saw lights in front of us. They were in the southbound lane. I don't know whose car it was. I don't know where these lights went. The lights were between our car and the bridge. The bridge where the collision occurred. There is a curve in the road before you got to the bridge. The curve blocks the view of the bridge from where I saw the lights from the car. The lights could have been between where we were and in the curve but I couldn't see if they were around the curve.

"I kept looking ahead. As we came up to where I could see the bridge I didn't see any lights. I didn't see anything else. I saw this car when the lights got close enough to see it, I could design (sic) something in the bridge with no lights on it. Close enough I could see a car,

Jimmy's car, sitting catabiason *(sic)* on the highway. . . . After we came around the curve I could design *(sic)* seem like some lights in front of us and after that I didn't see any more lights. After we came out of the curve to a place if it had been daylight we could have seen the bridge, I saw some taillights but I lost them in the curve. I don't know whether I saw them any more or not after we came around the curve. I can't testify now that I saw any taillights as we came around the curve.

"I didn't see any lights on the Williams car. If the Williams car was on fire, I didn't see it. Sure I was looking straight ahead. I was aware that there was something on the bridge before Mr. Foster's car lights picked up this car on the bridge. Just about the time his car lights picked it up I could see that there was a car on the bridge. As the Foster car approached on the bridge I braced myself. We were going to hit it. I couldn't say which lane Foster was in. Up unto the time I threw myself down in the back seat to brace myself Foster had been operating his car in the right-hand lane."

At the close of plaintiffs' evidence and again at the close of all the evidence, defendant Mildred Jean Williams, Administratrix of the Estate of James Daniel Williams, moved for a directed verdict in each case under Rule 50(a) on the grounds that (1) no negligence was shown on the part of Williams and (2) if any negligence was shown on the part of Williams, such negligence was insulated by the intervening negligence of Foster. The motions were overruled, and the jury answered the first two issues in each case as follows:

"1. Was the plaintiff injured by the negligence of Onwillard Junior Foster?

Answer: Yes.

2. Was the plaintiff injured by the negligence of James Daniel Williams, deceased?

Answer: Yes."

The jury awarded damages to the plaintiff in each case, and from judgments in accord with the verdict, defendant-Administratrix of Williams' estate appealed. Defendant Foster did not appeal.

*Corbett & Corbett by Albert A. Corbett, Sr. for plaintiff appellees Raynor and Martin.*

*Robert A. Spence for defendant appellant Williams.*

PARKER, Judge.

Appellant's only assignment of error is that the trial court erred in overruling her motions for a directed verdict. In this we find no error.

[1] A defendant's motion made in a jury trial for a directed verdict under Rule 50(a) of the Rules of Civil Procedure, G.S. 1A-1, presents substantially the same question as that formerly presented by a motion for judgment of involuntary nonsuit, namely, whether the evidence was sufficient to entitle the plaintiff to have the jury pass on it. *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396. In determining this question, all evidence which supports plaintiff's claim must be taken as true and viewed in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in his favor. *Maness v. Construction Co.,* 10 N.C. App. 592, 179 S.E. 2d 816, *cert. denied,* 278 N.C. 522, 180 S.E. 2d 610. Therefore, the only question presented by this appeal is whether the evidence in these cases, when so viewed, was sufficient to justify a jury finding that appellant's intestate, Williams, was negligent in the manner in which he drove his automobile on the occasion which gave rise to these actions, and if so, whether such negligence was one of the proximate causes of plaintiffs' injuries.

"It is well-settled law in North Carolina that each person whose negligence is a proximate cause or one of the proximate causes of injury may be held liable, severally or as a joint tort feasor. If a person's negligence is in any degree a proximate cause of the injury, he may be held liable, since he may be exonerated from liability only if the total proximate cause of the injury is attributable to another or others." *Price v. Railroad,* 274 N.C. 32, 161 S.E. 2d 590.

When viewed in the light most favorable to plaintiffs, the evidence in the cases before us would justify a jury finding that the following events occurred: Appellant's intestate, Williams, after drinking some quantity of alcohol (his death certificate

listed acute alcoholism as a contributing cause), drove his automobile late at night from a dine and dance club in Kenly, N. C., onto an interstate highway a distance of approximately three miles to the point where the highway passed over Little River on a bridge. The Foster car, carrying plaintiffs as passengers, left the club about the same time and proceeded "right behind" the Williams car, the two cars remaining in that order, the taillights of the Williams car being visible to the occupants of the Foster car as the Williams car went into the curve leading to the bridge. It was raining and foggy, which reduced visibility. The following vehicle, driven by Foster, was traveling at 65 to 70 miles per hour, and it is a reasonable inference that the Williams vehicle which preceded it was moving at least as fast. The Williams car hit the right guardrail at the north end of the bridge, leaving blue paint and a portion of the taillight from the car on or near the guardrail. It then skidded 120 feet and came to rest near the center of the bridge, upside down and at an angle across the southbound lanes of the highway, entirely blocking the left-hand lane and partially blocking the right-hand lane. The lights on the Williams car were knocked out as a result of hitting the guardrail or of turning over. Almost immediately thereafter, the Foster vehicle came around the curve and onto the bridge, striking the overturned Williams car a glancing blow and then proceeding onward 360 feet before stopping against a tree off of the road. Plaintiff Raynor, riding in the Foster car, did not see any fire in the Williams car as the Foster car was approaching the bridge. The witness, Atkinson, who arrived at the scene a few minutes later, found the Williams car on fire and it exploded after Atkinson got there. Williams's body was badly burned, and it is a reasonable inference that he got out of his overturned car only after it caught fire and that this occurred after it was struck by the following Foster car. The exact manner in which Williams got out of his car and into the river is not shown by the evidence, but this is not relevant to the question raised by this appeal.

[2]    The foregoing findings, if made by the jury, would in our opinion justify the jury in finding further that Williams was negligent in driving too fast and in failing to keep his car under control, and that as a result of his negligence his car struck the guardrail and overturned upon the bridge, blocking the highway and thereby making the collision with the immediately following vehicle almost inevitable. In our opinion

the jury would also be justified in finding that such negligence on the part of Williams was one of the proximate causes of plaintiffs' injuries. From their verdict the jury have so found. That they did so under appropriate and correct instructions from the able trial judge as to the law applicable to the evidence in these cases is apparent from the fact that no exception was taken to the charge.

No error.

Judges BRITT and MORRIS concur.